In re **INTERIORS OF YESTERDAY, LLC, Debtor.**

**John Orsini, Movant,**

v.

**Interiors of Yesterday, LLC. and Richard Belford, Trustee, Respondents.**

**No. 02–30563(LMW).**

United States Bankruptcy Court, D. Connecticut.

Oct. 11, 2002.

Vincent T. McManus, Jr., Esq., Vincent T. McManus, Jr. P.C., Wallingford, CT, for Movant.

Anthony S. Novak, Esq., Chorches & Novak, P.C., Wethersfield, CT, for Debtor/Respondent.

Steven E. Mackey, Esq., New Haven, CT, for the United States Trustee.

Richard Belford, Esq., New Haven, CT, Chapter 7 Trustee/Respondent.

### MEMORANDUM OF DECISION RE: PRO SE VOLUNTARY PETITION FILED ON BEHALF OF AN ARTIFICIAL ENTITY

LORRAINE MURPHY WEIL,
Bankruptcy Judge.

Among other issues, the above-referenced matters raise the issue of whether this chapter 7 case should be dismissed, or a putative secured creditor's motion for relief from stay should be granted, for the sole reason that the voluntary petition filed in this case was executed by a non-lawyer officer of the above-captioned debtor (the "Debtor") on its behalf even though counsel admitted to practice before this court subsequently appeared for the Debtor in this case. The referenced matters are

"core proceedings" within the purview of 28 U.S.C. § 157.[1]

## I. FACTS AND PROCEDURAL BACKGROUND

It is uncontested that the Debtor is an artificial entity—a "limited liability company" organized under the laws of the State of Connecticut. (*See* Doc. I.D. No. 15, "Consent of Managing Manager in Lieu of Special Meeting Thereof Held on February 6, 2002".)[2] The Debtor's Statement of Affairs alleges that Kathleen Tarro (the "Manager") is the "Managing Member" of the Debtor and has "100%" ownership of the Debtor. (*See* Doc. I.D. No. 15, Statement of Affairs item 19(b).) John Orsini (the "Movant") has not suggested otherwise. The authorization of the Manager to cause this case to be commenced by proper means has not been questioned. It is uncontested that the Manager is not an attorney.

On October 19, 2001, a voluntary petition under chapter 7 of the Bankruptcy Code was purportedly filed with this court in respect of the Debtor. That petition was assigned Case No. 01–35042 (the "First Case") and was assigned to the Honorable Albert S. Dabrowski.[3] That petition was executed by the Manager on behalf of the Debtor; no attorney signed that petition. (*See* First Case Doc. I.D. No. 1.) It was a "bare bones" filing, lacking schedules, statements and lists. (*See id.*) Because no mailing matrix was provided for the mailing of notices, no trustee was appointed for the case nor was any notice given of the commencement of the case.

Rather, notice was given to the Debtor that a hearing was scheduled for November 14, 2001 on the court's own motion to consider dismissal of the First Case for failure to file a mailing matrix. (*See* First Case Doc. I.D. Nos. 2, 5.) The day after the court's motion to dismiss was docketed, the Movant filed a motion for relief from stay. Thereafter, on November 5, 2001, the Debtor (through the Manager) purported to file a motion to extend the time to file its schedules (but not a mailing matrix), reciting that "counsel is needed in order to complete the schedules." (First Case Doc. I.D. No. 7.) On November 14, 2001, the court entered an order dismissing the First Case for failure to file a mailing matrix. (*See* First Case Doc. I.D. No. 9.)

On February 6, 2002, another voluntary petition (Doc. I.D. No. 1, the "Petition") filed in this court in the name of the Debtor at least purported to commence this case. The Petition was executed by the Manager and was another "bare bones" petition. (*See* Doc. I.D. No. 1.) The pattern of the First Case appeared to be repeating itself. No mailing matrix was filed with the Petition. (*See id.*) Accordingly, no trustee was appointed and no notice of the case filing was given. Instead, on the court's own motion a hearing was scheduled for March 13, 2002 to consider dismissal of this case for the Debtor's failure to file a mailing matrix. (*See* Doc. I.D. Nos. 2, 3.)

However, the pattern of this case then began to differ from that of the First Case. The Debtor filed a mailing matrix on Feb-

---

1. This memorandum of decision constitutes the findings of fact and conclusions of law mandated by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

2. The legal characteristics under Connecticut law of a "limited liability company" are set forth in Chapter 613 of the Connecticut Gen-

eral Statutes (Conn. Gen.Stat. §§ 34–100 *et seq.*).

3. References to the docket for the First Case are in the following form: "First Case Doc. I.D. No. _____."

ruary 26, 2002 and the court's motion to dismiss was marked "off." A chapter 7 trustee (the "Trustee") was appointed in the case and notice of the case filing and of the Bankruptcy Code § 341 meeting of creditors was sent out. (*See* Doc. I.D. Nos. 5, 7, 8, 9.)[4] On February 26, 2002, the Debtor (through the Manager) purported to file a "Motion for Extension of Time" requesting a "15 day continuance to obtain an attorney." (Doc. I.D. No. 4.) The court denied that motion by marginal order dated March 1, 2002 because the Trustee had not been given notice of the motion. (*See* Doc. I.D. No. 6.)[5]

The Movant filed a motion for relief from stay on April 23, 2002 (Doc. I.D. No. 10), and an amended motion for relief from stay on April 29, 2002 (Doc. I.D. No. 11, the "Lift Stay Motion").[6] On May 14, 2002, counsel admitted to practice before this court filed an appearance (Doc. I.D. No. 14, the "Appearance") for the Debtor. Shortly thereafter, the Debtor filed its schedules (and amended schedules) and statements. (*See* Doc. I.D. Nos. 15, 16, collectively (as amended), the "Schedules.") The Schedules allege that, as of the date of the Petition, the Debtor had assets valued (by the Debtor) at $1,143,200 (including a $450,000 contingent, unliquidated claim against the Movant for alleged fraud and breach of contract damages), $120,000 in secured debt (including the Movant's $110,000 disputed claim), a priority wage claim in an "unknown" amount (apparently owed to an insider of the Debtor), and $419,863 in general unse-cured claims (also including the Movant's disputed debt). (*See* Doc. I.D. Nos. 15, 16.)

The Lift Stay Motion seeks relief from stay based, among other things, upon the fact that the Petition was filed for the Debtor, an artificial entity, through a non-lawyer agent (i.e., the Manager).[7] The Lift Stay Motion initially was scheduled for a hearing on May 22, 2002. The court believed that the grounds for relief asserted in the Lift Stay Motion (i.e., the *pro se* filing of the Petition) more properly should be considered in the context of a proposed dismissal of this case with notice of the same being given to all creditors and parties in interest in accordance with Rule 2002(a)(4) of the Federal Rules of Bankruptcy Procedure. Accordingly, the initial hearing on the Lift Stay Motion was continued to June 18, 2002 and, on May 23, 2002, the court issued an Order To Show Cause Why Case Should not Be Dismissed (Doc. I.D. No. 17) ordering the Debtor to appear on June 18, 2002 "to show cause why ... [this] case should not be dismissed" and directing the parties to brief the issues now under consideration. The initial Order To Show Cause Why Case Should not Be Dismissed was amended on May 29, 2002 (Doc. I.D. No. 18, the "Show Cause Order") to broaden the scope of the required briefing. A continued hearing on the Lift Stay Motion and the initial hearing on the Show Cause Order were held on June 18, 2002.[8] At the hearings, the Movant appeared to prosecute the Lift Stay

---

4. After several continuances, the meeting of creditors ultimately occurred on June 7, 2002.

5. The court deemed that pleading to be a *pro se* pleading by the Manager in her own right as a party in interest.

6. Movant is the former lessor of the Debtor and claims to be a secured creditor of the Debtor by virtue of an attachment.

7. Except perhaps as a "bad faith filing" (which the court does not find on this record), the Petition is not alleged to be defective in any other respect.

8. Reference herein to the audio record of such hearings appear herein in the following form: "Record at ___:___:___."

Motion and to press for dismissal. The Trustee and the United States Trustee (the "UST") appeared to oppose dismissal.[9] These matters have been argued and fully briefed by the parties and now are ripe for decision.

Movant argues that this case must be dismissed or the Lift Stay Motion must be granted because the Petition was filed improperly by the Debtor *pro se*. A fair interpretation of Movant's argument is that the Petition was void *ab initio* or, in the alternative, failure by this court to dismiss this case otherwise would be reversible error. The Debtor argues that the Petition was proper as and when filed under both federal and state law or, if improper in any sense, any such impropriety (defect) was cured by the Appearance. The UST (and the Trustee) concede that the Manager's execution of the Petition was the unauthorized practice of law, but argue that such did not render the Petition incurably defective. Moreover, they argue, such defect was cured by the Appearance. Based upon the analysis set forth below, the court agrees in substantial part with the UST and the Trustee.

9. Subsequently, the Trustee filed an objection (Doc. I.D. No. 24, the "Objection") to the Lift Stay Motion, reciting that he now had "a serious question as to the validity of the attachment which is the subject of the [Lift Stay] Motion." (Objection at 1.)

10. Movant cites to Section 51–88 of the Connecticut General Statutes which makes it a crime (i.e., a misdemeanor) for "[any] person who has not been admitted as an attorney . . . [to p]ractice law, or appear as an attorney-at-law for another, in any court of record in the state. . . ." Conn. Gen.Stat. Ann. § 51–88(a) (West 2002). Whether an action constitutes the practice of law in a bankruptcy context is a question of federal law. *State Unauthorized Practice of Law Committee v. Paul Mason and Associates, Inc.*, 46 F.3d 469 (5th Cir.1995). However, "federal courts traditionally look to state law for assistance in determining what constitutes the [unauthorized] practice of

## II. DISCUSSION

The court begins by assuming, but not deciding, that the execution of the Petition by the Manager constitutes the unauthorized practice of law by the Manager under applicable law.[10] Having made that assumption, the court believes that the appropriate analysis is as follows: Was (is) the Petition void *ab initio?* If so, the Petition must be stricken from the docket as a nullity. If not, dismissal of this case must be considered under Bankruptcy Code § 707(a). Thus, the final question would become whether "cause" exists to dismiss this case under the instant circumstances.[11] The foregoing analysis is undertaken below.

### A. Void Ab Initio Vel Non

 It is a long standing rule that artificial entities may not appear in federal court through a non-lawyer agent or employee. The Second Circuit has articulated that rule as follows:

> Since, of necessity, a natural person must represent the . . . [artificial entity] in court, we have insisted that that per-

law." *Steyne v. Steyne (In re Steyne)*, Nos. CIV. A. 97–07304–W, 97–80348–W, 1998 WL 34020729, at *1 (Bankr.D.S.C. Feb.17, 1998). If the Movant (or any other party) believes that a substantial violation of Section 51–88 has been committed by the Manager in connection with this case, the appropriate authorities should be contacted. However, now that counsel has appeared for the Debtor, the court is confident that the potential for any possible future violations of Section 51–88 in respect of this Debtor has been eliminated.

11. For simplicity's sake, this memorandum hereafter generally will speak only in terms of dismissal of the case rather than relief from stay. That is because the court concludes below that the Petition was not void *ab initio* and (as explained below) the court also concludes that, based on the existing record in this case, "cause" does not exist to grant the Lift Stay Motion.

son be an attorney licensed to practice law before our courts. The rule that . . . [an artificial entity] may litigate only through a duly licensed attorney is venerable and widespread. The reasons for requiring that an attorney appear are . . . principally that the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims.

*Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir.1983) (citations omitted). The rule against *pro se* appearances by artificial entities applies to limited liability companies. *In re ICLNDS Notes Acquisition, LLC*, 259 B.R. 289 (Bankr.N.D.Ohio 2001).

There is some uncertainty as to whether the above-stated rule remains a common-law rule enforced by the courts to maintain the integrity of the judicial process and thus may be subject to judicially-created exceptions, or whether such rule has been codified by a federal statute (*e.g.*, 28 U.S.C. § 1654) [12] or a rule of procedure (*e.g.*, Fed. R. Bankr.P. 9010) [13] and thus is not subject to judicially-created exceptions. *Compare Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) ("We hold that 28 U.S.C. § 1654 prohibits a layperson from appearing on behalf of a partnership . . . .") *with Jones v. Niagara Frontier Transportation Authority*, 722 F.2d at 23 ("We see no compelling argument for allowing Jones to circumvent the *general* rule.") (emphasis added). *Cf. Fraass Survival Systems, Inc. v. Absentee Shawnee Economic De-*

---

**12.** Section 1654 provides as follows: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C.A. § 1654 (West 2002).

**13.** Rule 9010 provides as follows:

(a) **Authority to Act Personally or by Attorney.** A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the [Bankruptcy] Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

(b) **Notice of Appearance.** An attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number, unless the attorney's appearance is otherwise noted in the record.

(c) **Power of Attorney.** The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form. The execution of any such power of attorney shall be acknowledged before one of the officers enumerated in 28 U.S.C. § 459, § 953, Rule 9012, or a person authorized to administer oaths under the laws of the state where the oath is administered.

Fed. R. Bankr.P. 9010. The Advisory Committee Note to Rule 9010 is unclear as to whether it codifies the no-*pro se* appearance rule as to artificial entities or merely leaves the judge-made rule undisturbed. *See* Fed. R. Bankr.P. 9010 advisory committee's note ("This rule is substantially the same as former Bankruptcy Rule 910 and does not purport to change prior holdings prohibiting a corporation from appearing *pro se*. *See In re Las Colinas Development Corp.*, 585 F.2d 7 (1st Cir.1978)."). However, in any event, Rule 9010 speaks in terms of a pending case and does not address what is necessary to render a case pending.

*velopment Authority,* 817 F.Supp. 7, 9–10 (S.D.N.Y.1993) ("This Court finds that the text of § 1654 certainly means that courts cannot *reject* pro se *individuals,* but that it does not determine for all other cases whether a court can *accept* pro se *non-individuals* when the court deems appropriate.") (emphasis in original).

■ However, even assuming (but not deciding) that the referenced rule *has* been codified, the court does not believe that even such codification would render the filing of a voluntary petition in bankruptcy void *ab initio.*[14] As an initial matter neither 28 U.S.C. § 1654, Bankruptcy Rule 9010, Local Bankruptcy Rule 9010–1 [15], nor any other arguably relevant federal statute or rule expressly so provide.[16] Moreover, in *Jones v. Niagara Frontier Transportation Authority,* 722 F.2d 20, the Second Circuit affirmed the district court's dis-

---

**14.** The issue here is the narrow issue of whether a bankruptcy petition filed by an artificial entity *pro se* commences a case under title 11 rather than constituting a legal nullity. This opinion does not address the issue of whether, assuming that a case validly is commenced by such a petition, a non-lawyer ever can appear for an artificial entity to prosecute its bankruptcy case generally. *Cf. Schreibman v. Walter E. Heller & Company of Puerto Rico (In re Las Colinas Development Corp.),* 585 F.2d 7 (1st Cir.1978) (nonlawyer president and 94% stockholder of a corporation does not have the right to represent the corporation in all stages of its chapter XI bankruptcy proceeding). Furthermore, it should be noted that a bankruptcy petition cannot be filed *in forma pauperis* whether filed by an artificial entity or an individual. *See United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). That moots any concern this court might otherwise have had about the effect which the conclusion reached herein might have upon the application of the *informa pauperis* statute (28 U.S.C. § 1915) to the filing of bankruptcy petitions. *Cf. Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (only individuals and not artificial entities may proceed *in forma pauperis;* noting the general rule against *pro se* appearances by artificial entities).

**15.** Local Bankruptcy Rule 9010–1 provides as follows:

(a) The signature of an attorney for a petitioner on a bankruptcy petition or the signature of an attorney on a complaint or a motion in a bankruptcy case constitutes a notice of appearance pursuant to Fed. R. Bankr.P. 9010(b), and constitutes a certification that the attorney is authorized to

practice in the United States Bankruptcy Court for the District of Connecticut.

(b) An attorney entering a case under the Bankruptcy Code, or any matter commenced by a complaint or motion, shall first file an appearance with the court and serve the same upon the debtor or the debtor-or-in-possession, any trustee, any committee or its counsel, the United States Trustee, and, if an adversary proceeding, any party to such proceeding.

D. Conn. LBR 9010–1. Local Rule 9010–1 applies only to attorneys and does not apply to *pro se* filings.

**16.** Two other federal statutes merit specific mention here. The first is Bankruptcy Code § 109 which defines who may be a debtor in a case under title 11 of the United States Code. Section 109 is silent on the precise issue dealt with here. Moreover, it is uncontested that the Debtor is a qualified chapter 7 debtor under Section 109. Accordingly, the court concludes that Section 109 does not mandate a "void *ab initio*" rule. Bankruptcy Code § 301 is more relevant. Section 301 provides in relevant part: "A voluntary case under a chapter of ... title [11] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C.A. § 301(West 2002). Section 301 leaves to the federal rules of bankruptcy procedure, the local rules and the courts what constitutes a "filing" within the purview of Section 301. *Cf. In re McMeans,* 209 B.R. 253 (Bankr.N.D.Ala.1997) (finding that bankruptcy petition was deemed filed when it was stamped "filed" by the clerk's office and not when it was transmitted by facsimile to the clerk's office; applying local rule of bankruptcy procedure). Accordingly, the court concludes that Section 301 also does not mandate a "void *ab initio*" rule.

missal of a *pro se* complaint by an artificial entity *"unless* ... [the artificial entity] obtains counsel to represent it within 45 days...." *Id.* at 23 (emphasis added). That disposition is not consistent with a "void *ab initio*" rule. Furthermore, the United States Courts of Appeal for other circuits have not acted in a manner consistent with a "void *ab initio*" rule. For example, federal courts of appeal generally allow an artificial entity appellant to retain counsel and promptly cure a "defective" *pro se* notice of appeal.[17] *See, e.g., Harrison v. Wahatoyas, L.L.C.,* 253 F.3d 552, 557 (10th Cir.2001); *Instituto de Educacion Universal Corp. v. United States Department of Education,* 209 F.3d 18, 22 (1st Cir.2000); *Bigelow v. Brady (In re Bigelow),* 179 F.3d 1164, 1165 (9th Cir. 1999); *K.M.A., Inc. v. General Motors Acceptance Corp. (In re K.M.A., Inc.),* 652 F.2d 398, 399 (5th Cir.1981) (motion to dismiss *pro se* appeal granted "unless within 30 days of the entry of this order an attorney admitted to practice before this Court files an appearance to represent the corporate appellant ...."). Finally, even if it were relevant whether the Connecticut courts treat a *pro se* filing by an artificial entity as void *ab initio*,[18] that does not appear to be the Connecticut rule. *See Schwartz v. AAAA Legal Services, P.C.,* No. CV000597688, 2000 WL 33158615, at *4 (Conn.Super.Ct. Nov.8, 2000) ("If, within forty-five (45) days of receiving notice of this decision, a proper appearance has not been entered for the plaintiffs, the defendants may file a motion for nonsuit for failure to appear ...."); *Emtec Engineer-*

*ing, Inc. v. Administrator,* No. CV90034168S, 1991 WL 32031 (Conn.Super.Ct. Feb.21, 1991) ("If a proper appearance is not entered for the plaintiff, the defendant can file a motion for nonsuit.").

Based upon all of the foregoing, the court concludes that the Petition was not (and is not) void *ab initio.* Accordingly, this court declines to follow those courts which have held to the contrary such as *In re Video Systems Design & Sales, Inc.,* 129 B.R. 196 (Bankr.W.D.Mo.1991), and *In re Global Construction & Supply, Inc.,* 126 B.R. 573 (Bankr.E.D.Mo.1991). Rather, this court adopts as better reasoned the view exemplified by *In re Iclnds Notes Acquisition, LLC,* 259 B.R. 289, that (at least in the absence of a local rule to the contrary) a bankruptcy petition filed by an artificial entity *pro se* is not void *ab initio. See id.* at 293 ("The Court would ordinarily grant an additional period of time for the Debtor to obtain legal counsel.").

### B. *Dismissal Under Bankruptcy Code § 707(a)*

■ If the Petition was and is not void *ab initio,* then the question of dismissal of this case must be considered under the standards developed under Bankruptcy Code § 707(a). Section 707(a) provides in relevant part as follows: "The court may dismiss a case under this chapter only after notice and a hearing and only for cause...." 11 U.S.C.A. § 707(a) (West 2002).

---

17. As is a voluntary bankruptcy petition, a notice of appeal is, in at least some sense, a self-effectuating pleading. The filing of a voluntary bankruptcy petition automatically creates a bankruptcy estate and triggers the automatic stay. *See* 11 U.S.C. §§ 541, 362. The filing of a notice of appeal automatically strips the court below of jurisdiction over the matter being appealed. *See Griggs v. Provi-*

*dent Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

18. Given that the right at issue here is a statutory federal right rather than a state right, whether the Connecticut courts would follow a "void *ab initio*" rule arguably is irrelevant.

Section 707(a) provides three examples of "cause" that would justify dismissal of a chapter 7 case .... The examples are merely illustrative, and the court may dismiss the case on other grounds when cause is found to exist .... The court has substantial discretion in ruling on a motion to dismiss under Section 707(a) and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties.

6 Lawrence P. King, *Collier on Bankruptcy* ¶ 707.03[1], at 707–7 to 707–8 (15th ed. rev.2001) (footnotes omitted). The burden is on the party alleging "cause" to prove its existence by a preponderance of the evidence. *Cf. Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 743 (11th Cir. 2000). The court here is not persuaded that there is "cause" to dismiss this case for the reasons that follow.[19]

Any defect inherent in the Petition resulting from its *pro se* nature was cured by the Appearance. *Cf. Jones v. Niagara Frontier Transportation Authority, supra; In re Iclnds Notes Acquisition, LLC, supra.*[20] The Appearance was reasonably prompt in that no one has argued that the administration of this case actually has been substantially compromised by the passage of time between the filing of the Petition and the filing of the Appearance. The Debtor has filed the Schedules and has submitted to examination under oath at the Section 341 meeting of creditors. Both the Trustee and the UST argue against dismissal. Moreover, the interests of the Debtor's creditors further militate against dismissal. Movant (through counsel) himself has made allegations of serious misconduct by the Debtor's management. (*See* Record at 3:49:13 *et seq.*) If this case remains pending, that management will remain ousted from control over the Debtor's assets. *Cf.* 11 U.S.C. §§ 541, 363. Furthermore, the Trustee now questions the validity of the Movant's attachment. Finally, the Debtor also alleges that there may be preference causes of action against the Movant which (if valid) would be time barred if this case were to be dismissed.[21]

The Movant argues that this court should not "reward" the Debtor and/or the Manager for the *pro se* filing of the Petition by leaving this case on the court's docket. However, that argument ignores the fact that a voluntary petition in bankruptcy not only is a qualifying debtor's right, but also is such debtor's creditors' remedy. Further, the Movant ignores the fact that a voluntary chapter 7 case for an artificial entity (at least arguably) has more of the earmarks of a creditor's remedy than of a debtor's right. For example, filing of the voluntary petition strips the entity (and its management) of control over its property (including causes of action), title to which is vested in the chapter 7 trustee. 11 U.S.C. §§ 541, 363. The trustee is the representative of the entity's

---

19. Although the Movant bears the burden of proof on the issue of Section 707(a) "cause" for dismissal purposes, the Debtor and the Trustee bear the burden to refute the existence of Section 362(d)(1) "cause" for relief from stay purposes. *See* 11 U.S.C. § 362(g). However, even with the burden so shifted, the court is persuaded that, for the reasons set forth below and based on the existing record in this case, "cause" does not exist to grant the Movant relief from stay.

20. The court expresses no opinion whether, absent the Appearance, this case would have been dismissed on these facts.

21. The court does not assume that the Movant's attachment is invalid or that the Movant is the recipient of avoidable transfers, but merely notes that such allegations have been made. Similarly, the court does not assume that the Movant's allegations of misconduct by the Debtor's management are true, but merely notes that the Movant himself has made such allegations.

creditors. *See Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 705 (6th Cir.1999). The power to avoid the entity's transfers under chapter 5 of the Bankruptcy Court is vested in the trustee and is exercised for the benefit of the debtor's creditors, not the debtor. 11 U.S.C. §§ 544 *et seq.*; *Whiteford Plastics v. Chase National Bank*, 179 F.2d 582 (2d Cir.1950). The trustee liquidates the debtor's assets for distribution to its creditors. 11 U.S.C. §§ 704, 726. The debtor receives only what remains after claims of creditors have been paid in full (with interest). 11 U.S.C. § 726(a). If the artificial entity debtor does not fulfill its duties under Bankruptcy Code § 521, the chapter 7 trustee can have the debtor's manager or the like designated as the person to perform them. *See* Fed. R. Bankr.P. 9001(5). An artificial entity does not receive a chapter 7 discharge. 11 U.S.C. § 727. Finally, an artificial entity cannot claim exempt property. 11 U.S.C. § 522.[22]

The court has considered all of the Movant's arguments and cited authorities and has found them to be unpersuasive and/or inapposite. Accordingly, for all of the foregoing reasons and based upon the existing record in this case, the court is not persuaded that the *pro se* filing of the Petition constitutes "cause" to dismiss this case under Section 707(a) and is persuaded that "cause" does not exist to grant the Lift Stay Motion.

### III. CONCLUSION

For the reasons stated above, an order will enter (1) discharging the Show Cause Order and (2) denying the Lift Stay Motion and sustaining the Objection unless, within ten (10) days after the date of such order, the Movant files an amended Lift Stay Motion stating other and further grounds for relief from stay.

---

22. Conceivably, the Debtor could have solicited an appropriate number of qualified creditors to file an involuntary petition against it, and then allowed an order for relief to enter by default. *See* 11 U.S.C. § 303. However, for this court to suggest now that the Debtor should have done that would be to ignore the reality that creditors often are leery of the potential expense, burdens and liability exposure which accompany an involuntary petition. *See, e.g.*, 11 U.S.C. § 303(i) (potential of judgment against unsuccessful petitioning creditor for costs, fees and possibly compensatory and punitive damages); Fed. R. Bankr.P. 1007(k) (court may order petitioning creditor to file schedules and lists for the involuntary debtor).