**In re Cameia DAVIS, Debtor.**

**No. 06–15437.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Nov. 2, 2007.

Alan I. Silver, Cleveland, OH, for Debtor.

Rabin & Rabin Co. LPA, Cleveland, OH, for trustee.

Mary Ann Rabin, Cleveland, OH, trustee.

Linda M. Battisti, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

## *JUDGMENT*

RANDOLPH BAXTER, Chief Judge.

A Memorandum of Opinion and Order having been rendered by the Court in this matter, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Trustee's motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(3) is granted and the

Debtor's case is hereby dismissed. The Debtor's objection is hereby overruled. Each party is to bear its respective costs. **IT IS SO ORDERED.**

### MEMORANDUM OF OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(2) and (3) (the "Motion") filed by the United States Trustee for Region 9 (the "Trustee") over the objection of Cameia Davis (the "Debtor").

This Court acquires core matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), 28 U.S.C. § 1334 and General Order No. 84 of the District.

A hearing was held upon due notice to all entitled parties. After considering the parties' respective briefs, oral arguments and evidence presented at the evidentiary hearing held on August 23, 2007, the Court issues this memorandum of opinion and order.

\*

On November 6, 2006, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. The Debtor is employed as a clerk with the U.S. Postal Service where she has worked for over 13 years. She has one school aged child. This petition is her only bankruptcy filing.

On the first page of her original bankruptcy petition, the Debtor identified the nature of her debts as consumer/non-business. She did not identify any creditors holding unsecured claims. She scheduled two secured claims. The first claim is a $5,100 car loan for a vehicle which she stated she would retain and continue to make regular payments. *See Debtor's*

*Schedule D* and *Debtor's Statement of Intention.* The Debtor's schedules indicate that she owns one vehicle, a 2002 Ford Explorer. *See Debtor's Schedule B.* The Debtor's 2002 Ford Explorer is encumbered by a security interest, requiring monthly payments. *See Debtor's Schedule D.* The second claim is a $91,388.54 deficiency claim resulting from a default judgment on a mortgage that the Debtor executed as the sole borrower to purchase real estate located at 1768 Noble Road, East Cleveland, Ohio 44112 (the "Noble Road property").

After filing her voluntary petition, the Debtor subsequently filed the required Statement of Current Monthly Income and Means Test Calculation, Form B22A (hereinafter, the "Means Test"). The Trustee reviewed the papers filed by the Debtor and determined that the Debtor's case is presumed to be an abuse pursuant to 11 U.S.C. § 707(b) and filed the Motion herein. After the Trustee filed his Statement of Presumed Abuse and the Motion, the Debtor amended her Schedules, Means Test, and bankruptcy petition.

Among changes to the Debtor's amended Schedules, she added a $1,000.00 claim for her Thrift Savings Plan Loan as a secured debt. She also modified the first page of her bankruptcy petition changing the designation regarding the nature of her debts from consumer/non-business to business debts.

The Debtor made numerous amendments to her Means Test. According to her amended Means Test, her gross monthly income is $4,822.00 for an annualized income of $57,864.00, which exceeds the applicable median family income of $46,376.00 for a family of two in Ohio. *See Amended Chapter 7 Statement of Current Monthly Income and Means Test Calculation—Form 22A* filed by Debtor Cameia Davis, Case No. 06–15437, Docket No. 33

(hereinafter, the "Amended Means Test" or the *"Debtor's Amended Means Test"*); *see also* http://www.usdoj.gov/ust/eo/ bapc-pa/20061001/bci_data/median_income_table.htm (median income amount for a debtor, who is an Ohio resident, with a family of two and filed a bankruptcy case between October 1, 2006, and January 31, 2007).

The Debtor also scheduled various other expenses or deductions on her Amended Means Test. She scheduled monthly taxes of $1,263.00 per month. *See Debtor's Amended Means Test,* Line 25. The Debtor identified a mandatory contribution to her federal retirement plan of $32.00 per month. *Id.,* Line 26. She included a $25.35 monthly deduction for her employer-sponsored life insurance. *Id.,* Line 27. The Debtor scheduled a $52.00 per month expense for her cell phone. *Id.,* Line 32. She included a $94.51 monthly expense for her employer-sponsored health insurance. *Id.,* Line 34. The Debtor took a $33.00 deduction for additional food and clothing expense. *Id.,* Line 39. She deducted $80.80 for future payments on secured claims. *Id.,* Line 42.

* *

The Trustee asserts that the Debtor's case should be dismissed because a presumption of abuse arises pursuant to 11 U.S.C. § 707(b)(2) and, under the totality of the circumstances, granting the Debtor a Chapter 7 discharge would be an abuse under 11 U.S.C. § 707(b)(3). The Trustee contends that the Debtor has taken deductions on her Amended Means Test which exceed the allowable amounts. He avers that once the appropriate deductions are entered on the Means Test the presumption of abuse arises and the Debtor did not rebut this presumption by introducing evidence to demonstrate special circumstances as provided under 11 U.S.C. § 707(b)(2)(B). The Trustee further contends that even if the presumption of abuse does not arise, the Debtor has disposable monthly income that should be used to pay creditors. The Trustee argues that the Debtor chooses to direct her disposable income into a voluntary Thrift Savings Plan for future use. He states that contributing to a savings account, while seeking discharge of her debts, constitutes an abuse under the totality of the circumstances test and warrants dismissal pursuant to 11 U.S.C. § 707(b)(3).

Additionally, the Trustee disputes the Debtor's amended petition characterizing the nature of her debts as primarily business debt. He states that the Debtor incurred a mortgage loan to purchase the Noble Road property as a favor to her then-boyfriend, Anthony Foreman. The Trustee argues that this arrangement was not a business debt because: there was no written agreement between the Debtor and Anthony Foreman with respect to the purchase of the Noble Road property; the Debtor did not expect to receive a profit from the transaction; the Debtor terminated her relationship with Anthony Foreman soon after the purchase of the Noble Road property; and the Debtor has not communicated with Anthony Foreman since the relationship ended many years ago. For these reasons, the Trustee contends that all of the debts in this case are consumer debts and not business debts. Therefore, the Trustee asserts that the facts of this case satisfy the requirement of the debtor's debts being primarily consumer debts and subject to dismissal pursuant to 11 U.S.C. § 707(b).

The Debtor opposes the relief sought by the Trustee. The Debtor contends that she has never lived at the Noble Road property. The Debtor asserts that she incurred the mortgage debt to purchase the Noble Road property so that her then-boyfriend, Anthony Freeman, could fix up the property and sell it for a profit. The

Debtor argues that this was strictly a business arrangement. She avers that dismissal pursuant to 11 U.S.C. § 707(b) only applies if the debtor's debts are primarily consumer debts and does not apply to her case because her mortgage debt was not incurred for a personal, family or household purpose as "consumer debt" is defined under 11 U.S.C. § 101(8).

The Debtor further contends that her Thrift Savings Plan account is a secured debt and payments made pursuant to this repayment obligation results in an adjustment under 11 U.S.C. § 707(b)(2)(B)(iv) which rebuts the presumption of abuse.

\* \* \*

The dispositive issue before this Court is whether the Debtor's petition for relief, as amended, constitutes an abusive filing.

\* \* \* \*

Section 707 of the Bankruptcy Code provides for dismissal of a Chapter 7 case or conversion to a case under chapter 11 or 13. A case is dismissed where a court finds that the granting of relief would constitute an abuse of the Chapter 7 provisions.

Title 11 U.S.C. § 707(b) states the following:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues

to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

Section 101(8) of the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose."

Sections 707(b)(2)(A)(ii), (iii) and (iv) describe the applicable and actual expenses that a debtor may claim.

Sections 707(b)(2)(B), (C), and (D) identify the requirements for rebutting the presumption of abuse.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

(C) As part of the schedule of current income and expenditures required under section 521, the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(i), that show how each such amount is calculated.

(D) Subparagraphs (A) through (C) shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran (as defined in section 3741(1) of title 38), and the indebtedness occurred primarily during a period during which he or she was—

(i) on active duty (as defined in section 101(d)(1) of title 10); or

(ii) performing a homeland defense activity (as defined in section 901(1) of title 32).

If the presumption of abuse does not arise or is rebutted, then the court considers the totality of the circumstances under 11 U.S.C. § 707(b)(3).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

■ Section 707(b)(2)(A) of the Bankruptcy Code sets forth the criteria for a presumption of abuse and constitutes the means test for a debtor's ability to repay his debts. The means test is a form that presents a statement of the debtor's current monthly income and shows whether or not a presumption of abuse arises as a consequence of identifying monthly disposable income in excess of the limits described under Section 707(b)(2)(A)(ii), (iii) and (iv). A debtor's monthly disposable income is determined by deducting certain allowances and other expenses from the debtor's current monthly income. A presumption of abuse arises and the debtor fails the means test if the debtor's monthly disposable income is sufficient to show that he can repay at least $100 monthly to unsecured creditors over 60 months or 25% of the debtors unsecured debts if that amount is greater than $6,000, or $166.67 per month to unsecured creditors over 60 months if $10,000 is less than 25% of the unsecured debt.

Title 11 U.S.C. § 101(10A) defines "current monthly income" as:

... the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii);

With the exception of future payments on secured debt, expenses do not include monthly payments for debt pursuant to 11 U.S.C. § 707(b)(2)(A)(ii)(I). Under Section 707(b)(2)(A)(iii), future monthly payments on secured debt are determined as the sum of:

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

Section 707(b)(2)(A)(ii)(I), provides, in part:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

The standard expense allowances determined by the Internal Revenue Service ("IRS") for use in completing bankruptcy forms are posted at: http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm. There are standards listed for allowable living expenses including food, housekeeping supplies, apparel & services, personal care products & services, and miscellaneous items. The standards are based upon the number of members in the household and their gross monthly income.

\* \* \* \* \* \*

Herein, the Debtor earns a gross annual income of $57,864.00, which exceeds the applicable median family income of $46,376.00 for a family of two in Ohio, and seeks discharge on debts totaling $97,488.54, of which $91,388.54 represents a debt that arose from the purchase of the Noble Road Property in 2001. It is undisputed that in March of 2001, the Debtor executed this mortgage loan as the sole borrower to purchase the Noble Road property. It is also undisputed that the Debtor did not make any payments on the mortgage, was sued in foreclosure, did not file an answer or other dispositive motion, and received a default judgment. The Debtor's Amended Schedule D identifies $86,388.54 of the mortgage debt to be unsecured.

At the evidentiary hearing, the Debtor testified that although she owed approximately $1,300 in credit card debt, she did not schedule any unsecured debt. However, since the amount of nonpriority unsecured claims in this case is at least $86,388.54, then pursuant to section 707(b)(2)(A)(i) of the Bankruptcy Code, the Court shall presume abuse exists if it is shown that the Debtor has monthly disposable income sufficient to repay at least $10,000 to unsecured creditors over 60

months, or $166.67 per month for 60 months. *See* 11 U.S.C. § 707(b)(2)(A)(i)(II).

A side-by-side comparison of the means test analyses provided by the Debtor and the Trustee reveals the following disputed deductions:

| Means Test Review | Trustee's Version | Debtor's Version | Disputed Amount |
|---|---|---|---|
| Line 23—Vehicle Ownership Expense | $ 386.00 | $ 390.20 | $ 4.20 |
| Line 25—Taxes | $1,095.99 | $1,263.00 | $167.01 |
| Line 26—Mandatory Payroll Deductions | $ 31.00 | $ 32.00 | $ 1.00 |
| Line 27—Life Insurance | $ 20.75 | $ 25.35 | $ 4.60 |
| Line 32—Telecommunication Services | $ 42.00 | $ 52.00 | $ 10.00 |
| Line 34—Health Insurance | $ 98.57 | $ 94.51 | -$ 4.06 |
| Line 39—Additional Food and Clothing | $ 0 | $ 33.00 | $ 33.00 |
| Line 42—Future Payment on Secured Claim | $ 85.00 | $ 80.80 | -$ 4.20 |
| **Total Disputed Amount** | | | $211.55 |

If the deductions specifically disputed by the Trustee on the means test were amended to reflect the Trustee's calculations, the Debtor would have $377.42 in monthly disposable income compared to the $165.87 in monthly disposable income that the Debtor's Amended Means Test discloses.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") has amended the Bankruptcy Code in ways that impact the present Motion. First, BAPCPA removed the express presumption in favor of granting the relief requested by the debtor and, second, BAPCPA has added § 707(b)(3) to the Bankruptcy Code as an additional basis for dismissal of a Chapter 7 debtor's bankruptcy case. *See* 11 U.S.C. § 707(b).

Pre–BAPCPA, a United States Trustee seeking dismissal of a chapter 7 case bore the burden of overcoming the strong presumption in favor of granting the discharge requested by the debtor. *In re Farrell,* 150 B.R. 116, 118 (Bankr.D.N.J. 1992). Historically, courts treated the pre-BAPCPA presumption in favor of granting the relief requested by the debtor as a "caution and reminder" for the court to "give the benefit of any doubt to the debt-

or and dismiss a case only when a substantial abuse is clearly present." *In re Kelly,* 841 F.2d 908, 917 (9th Cir.1988). BAPC-PA eliminated the substantial abuse standard utilized in determining if a debtor's case required dismissal and adopted a lower standard of abuse in considering a motion under § 707(b). *See* 11 U.S.C. § 707(b)(3).

■ The *Kelly* court also addressed the meaning of "primarily consumer debts". In *Kelly,* the debtors contended that their mortgage debt was not consumer debt because it was a debt secured by real property. *In re Kelly, supra* at 912. The *Kelly* court held that:

> While secured debt is not automatically excluded from consumer debt, it is not automatically included either. We must look to the purpose of the debt in determining whether it falls within the statutory definition.

Under 11 U.S.C. § 101(8), consumer debt is defined as a debt incurred for personal, family or household use. The *Kelly* court concluded that the debtors' mortgage debt was consumer debt because part of the mortgage debt was incurred to serve the family and household purpose of providing shelter for the family and another part of

the mortgage debt was a home equity line of credit used to pay off personal credit cards. *Id.* at 913. The existence of primarily consumer debt alone does not result in dismissal under § 707(b), the court must also consider the abuse requirement. *Id.; see also In re Price,* 353 F.3d 1135, 1139 (9th Cir.2004).

■ It is generally held that a business debt requires a profit motive. For example, in *In re Booth,* 858 F.2d 1051 (5th Cir.1988), the court held that when a credit transaction involves a profit motive it is outside the definition of consumer credit. The *Booth* court held, "the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit". *In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988); *see also In re Almendinger,* 56 B.R. 97 (Bankr. N.D.Ohio 1985).

In the present case, the purpose of the Debtor's mortgage debt was to purchase the Noble Road property for her then-boyfriend, Anthony Foreman. As such, the Debtor testified: that there was no agreement regarding the distribution of any proceeds from the sale of the Noble Road property; that the Noble Road property purchase was a singular transaction with Anthony Foreman; that she was not expecting any money from the sale of the Noble Road property; and that she is not now and has not been in the past engaged in the business of fixing up homes and selling them for a profit. Significantly, the Debtor's original petition identified her debts as consumer/non-business debts. The Debtor only amended the designation regarding the nature of her debts after the Trustee filed this dismissal Motion. Black's Law Dictionary defines business as "a commercial enterprise carried on for profit; a particular occupation or employ-

ment habitually engaged in for livelihood or gain." *Black's Law Dictionary* 211 (8th ed.2004). Therefore, the mortgage debt does not qualify as a business debt because the Debtor had no profit motive and was not regularly employed in fixing up homes and selling them for a profit. For these reasons, the Trustee has demonstrated, by a preponderance of the evidence, that the debts at issue in this case are primarily consumer debts. The Trustee has shown that the mortgage debt was not a business debt because the purpose of the debt was a personal favor for the Debtor's then-boyfriend, Anthony Foreman with no profit motive. The Debtor's debts are primarily consumer as all of her debts are consumer debts. Satisfying the requirement that her debts be primarily consumer debts, the Debtor's case is subject to dismissal for abuse pursuant to section 707(b) of the Bankruptcy Code.

■ Pre–BAPCPA, a debtor's case could be dismissed for substantial abuse based upon either lack of honesty or want of need. *See Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004); *see also In re Krohn,* 886 F.2d 123 (6th Cir. 1989). BAPCPA codified the lack of honesty and want of need factors under § 707(b)(3). Therein, a debtor's case can be dismissed for abuse upon either bad faith (i.e. lack of honesty) or totality of the circumstances of the debtor's financial situation demonstrates abuse (i.e. want of need). 11 U.S.C. § 707(b)(3); *See In re Oot,* 368 B.R. 662, (Bankr.N.D.Ohio 2007); *In re Wright,* 364 B.R. 640, (Bankr. N.D.Ohio 2007); *In re Henebury,* 361 B.R. 595 (Bankr.S.D.Fla.2007); *In re Mestemaker,* 359 B.R. 849 (Bankr.N.D.Ohio 2007); *In re Simmons,* 357 B.R. 480 (Bankr.N.D.Ohio 2006). "It is a closely related fundament of statutory construction that, where Congress codifies prior case law, those prior holdings remain not

only good law, but should serve as a valuable touchstone for interpreting the statute." *In re Oot,* 368 B.R. 662, (Bankr. N.D.Ohio 2007) (*citing CoStar Group Inc. v. LoopNet, Inc.,* 373 F.3d 544, 553 (4th Cir.2004)). Therefore, pre-BAPCPA decisions provide guidance in evaluating motions to dismiss.

■ In the present case, although the Trustee contends that the Debtor has taken deductions on her Amended Means Test which exceed the allowed amounts, he has not alleged that any deductions were taken in bad faith, only that the parties differ on the amount of the deductions. For example, the Trustee allows the Debtor a $42.00 cell phone expense on Line 32 of the Means Test while the Debtor has asserted a $52.00 deduction. As the Trustee has not offered objective data to substantiate his assertion that the Debtor's deductions exceed allowed amounts, his figures carry no greater weight than the deductions sought by the Debtor. Accordingly, deference is accorded to the Debtor with regard to allowing her to take her asserted deductions or expenses. A debtor's good faith is presumed at the time of filing the petition, but may be called into question by a party moving to dismiss the case by presenting evidence to impugn the debtor's good faith. *See In re Interiors of Yesterday, LLC,* 284 B.R. 19 (Bankr. D.Conn.2002); *In re Price,* 280 B.R. 499 (9th Cir. BAP 2002). Herein, the Trustee has not presented sufficient evidence to discredit the Debtor's good faith. Indeed, there have been no allegations of bad faith made against the Debtor by the Trustee. For this reason, the Debtor will be allowed to take her asserted deductions on her Amended Means Test. Thusly, the presumption of abuse does not arise pursuant to § 707(b)(2) of the Bankruptcy Code warranting dismissal of the Debtor's Chapter 7 case.

The inquiry for a motion to dismiss pursuant to § 707(b) of the Bankruptcy Code does not end with the determination of whether the presumption of abuse arises. Section 707(b)(3) grants a court the authority to dismiss a Chapter 7 case, where the presumption of abuse does not arise, for either bad faith or the totality of the circumstances if the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3). Since there has been no allegations of bad faith brought by the Trustee against the Debtor, this Court renders its decision on the basis of the totality of the circumstances.

■ The Bankruptcy Code does not define the term "totality of the circumstances." However, two pre-BAPCPA Sixth Circuit Court of Appeals decisions, *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004) and *In re Krohn,* 886 F.2d 123 (6th Cir.1989), provide guidance on the totality of the circumstances basis for dismissal under § 707(b). Among the factors to be considered in deciding whether the totality of the circumstances warranted a dismissal of the debtor's case under § 707(b), the *Krohn* court opined:

A court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn,* 886 F.2d at 126; *accord Behlke v. Eisen,* 358 F.3d at 435. Additionally, to meet the burden established in 11 U.S.C. § 707(b) for dismissal, the Trustee who is the moving party, must prove by a preponderance of the evidence that the debts in question are consumer debts, and that granting relief would constitute abuse. *In re Browne,* 253 B.R. 854, 856–7 (Bankr.N.D.Ohio 2000).

■ In determining whether the totality of the circumstances of a debtor's financial situation demonstrates abuse pursuant to § 707(b)(3), a court should consider if a debtor has the ability to pay his unsecured debt through a Chapter 13 plan based on the totality of the debtor's financial situation. *See, In re Pak,* 343 B.R. 239, 246 (Bankr.N.D.Cal.2006); *In re Richie,* 353 B.R. 569, 575–76 (Bankr.E.D.Wis.2006).

In the present case, the Debtor is gainfully employed and has been for a sustained period of time, 13 years. She earns an above-median income for her family size and geographical location. It is undisputed that, even if the Debtor is allowed all of her asserted means test deductions for expenses, she has at least $165.87 in disposable monthly income to pay creditors. Over 60 months, the Debtor would be able to pay $9,952.20 towards her unsecured debt through a Chapter 13 plan.

Furthermore, the Debtor's $1,000.00 claim for her Thrift Savings Plan Loan that was added as a secured debt on Debtor's Amended Schedule D to rebut the presumption of abuse is not permitted to reduce her monthly disposable income available. The Sixth Circuit Court of Appeals has set forth the precedent that voluntary contributions to a 401(k) or other retirement plan and loan repayments for these types of accounts cannot be deducted from the debtor's disposable income because "it would be unfair to the creditors to allow the [d]ebtors … to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *Behlke v. Eisen (In re Behlke),* 358 F.3d at 435 *citing In re Harshbarger,* 66 F.3d 775 (6th Cir.1995).

At the evidentiary hearing, the Debtor's counsel represented that repayment on a 401(k) loan is a secured obligation which results in an adjustment under 11 U.S.C. § 707(b)(2)(B)(iv) for purposes of the means test to rebut a presumption of abuse. Debtor's counsel referenced *In re Thompson,* 350 B.R. 770 (Bankr.N.D.Ohio 2006), as authority for his position and stated that he amended Debtor's Schedules on May 30, 2007 in reliance on that decision. Debtor's Amended Means Test was modified by reducing what had been characterized as necessary taxes on the original means test in the amount of $1,766.00 to $1,263.00 and the $503.00 difference was explained at the evidentiary hearing to be an arithmetic error, in part, and a $399.00 monthly Thrift Savings Plan Loan repayment, in part. After Debtor's Amended Schedules were filed and prior to the within evidentiary hearing, *Thompson* was reversed on appeal in *Eisen v. Thompson,* 370 B.R. 762 (N.D.Ohio June 29, 2007). In reversing *Thompson,* the *Eisen* court noted "401(k) loans are finite, and Chapter 13 proceedings are prospective … Because a 401(k) loan might be paid off within the commitment period of a Chapter 13 case, the Trustee would have the ability to direct newly available funds to creditors." *Id.* at 771. Herein, the Debtor scheduled a $1,000.00 Thrift Savings Plan Loan with a $399.00 monthly repayment. Similar to a 401(k) loan, the Debtor's Thrift Savings Plan Loan might be paid off sooner than a prospective Chapter 13 plan and then, once the Thrift Savings Plan Loan is repaid, the Debtor will have the ability to repay her unse-

cured creditors over a five year plan. Additionally, the *Eisen* court concluded,

> The 2005 Act signaled a sea change in the bankruptcy world. Under the prior regime, nearly all debtors obtained a complete discharge under Chapter 7. Now, any debtor who is likely to have the ability to repay even a small portion of his or her debts at any time over the next five years will have to participate in a partial repayment plan under Chapter 13.

*Id.* at 773. Herein, this Court has afforded the Debtor all of her asserted deductions on her Amended Means Test and she still has the present ability to repay at least $165.87 per month until her $1,000.00 Thrift Savings Plan Loan is repaid at which time she will have an additional $399.00 per month to repay her unsecured creditors.

Thusly, based on the totality of the Debtor's financial situation, it is hereby determined that granting the Debtor relief under Chapter 7 would constitute abuse pursuant to § 707(b)(3).

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, the Trustee's motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(3) is granted and the Debtor's case is hereby dismissed. The Debtor's objection is hereby overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**