**In re Dennis Clark WRAY and Janet Ann Wray, Debtors.**

**UNITED STATES TRUSTEE, Movant,**

**v.**

**Dennis Clark WRAY and Janet Ann Wray, Respondents.**

**Bankruptcy No. 91–3165–BM.
Motion No. 91–8414M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 8, 1992.

Kathleen Robb–Singer, Office of United States Trustee, Pittsburgh, Pa.

Mary Jane Jacques, Jacques & Jacques, P.C., Natrona Heights, Pa., for debtors/respondents.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The United States Trustee has brought a motion pursuant to 11 U.S.C. § 707(b) to dismiss debtors' voluntary chapter 7 petition, averring that granting debtors relief under chapter 7 would constitute a substantial abuse of that chapter of the Bankruptcy Code. The U.S. Trustee asserts that the debts listed in the bankruptcy schedules are primarily consumer in nature and maintains that debtors are able to fund a chapter 13 plan.

Debtors oppose the motion. They concede that their debts are primarily consumer in nature, but deny that granting them relief would be a substantial abuse of chapter 7. Debtors specifically deny that they are able to fund a chapter 13 plan of reorganization.

The U.S. Trustee's motion will be granted. Debtors' chapter 7 petition will be dismissed. However, the court will consider vacating the order of dismissal if debtors file a motion to reconsider within ten (10) days of the entry of the Order and request conversion to chapter 13 at that time.

–I–

## FACTS

Debtors filed a voluntary joint chapter 7 petition on September 10, 1991. Dennis Wray is a school teacher and earns approximately $40,500 per year. Janet Ann Wray is a part-time receptionist who earns approximately $4,000 per year. Debtors' combined monthly gross income exceeds $3,700.

In the bankruptcy schedules appended to their petition, debtors listed assets valued at $18,405.00 and total liabilities of $76,746.42. Secured debt pertaining to motor vehicles and certain household items amounted to $16,795.86. The remaining $60,011.06 in debt is unsecured. None of the debt incurred is attributable to illness or to unforseen catastrophic circumstances. Except for $2,573.25 owed to the father of Janet Ann Wray, all of the unsecured debt is credit card debt incurred in making consumer purchases.

Debtors claim that their combined monthly net income is $2,720.42. They also assert in Schedule J that their current monthly expenditures amount to $4,084.73, which exceeds their alleged monthly net income by $1,364.31. Included among their monthly expenditures are the following:

| | |
|---|---|
| Rent and utilities | $ 722.00 |
| Food | 453.00 |
| Clothing | 55.00 |
| Medical and dental expenses | 23.00 |
| Recreation, etc. | 38.00 |
| Charitable contributions | 20.00 |
| Credit card and personal loan payments | 2,178.58 |
| Hair cuts, dining out, gifts, and pets | 166.00 |

Attached to the petition was a declaration signed by both debtors in which they declared, under penalty of perjury, that the information contained in the schedules was true and correct to the best of their knowledge, information, and belief.

A section 341 meeting of creditors was conducted by the interim chapter 7 trustee on October 16, 1991. A report of no distribution was filed on October 17, 1991, in which the chapter 7 trustee represented that no property was available for distribu-

tion to creditors over and above what had been exempted by debtors.

On November 20, 1991, the U.S. Trustee filed the motion to dismiss which is before the court at this time. Notice of a hearing on the matter was sent to debtors and to their counsel. A hearing on the motion was conducted on December 17, 1991, at which time debtors' counsel appeared and opposed the motion.

–II–

ANALYSIS

11 U.S.C. § 707(b) provides as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ Debtors concede that their debts are primarily consumer in nature—i.e., were incurred by them primarily for personal, family, or household purposes. See 11 U.S.C. § 101(7). The bankruptcy schedules submitted by debtors indicate that the debts incurred by them were entirely, not merely primarily, consumer in nature.

The issue that must be decided is whether granting debtors relief would constitute substantial abuse of the provisions of chapter 7 of the Code.

■ Congress regrettably did not define "substantial abuse". The principal factor to be considered in determining whether substantial abuse will occur is whether the debtor has the ability to repay the debts for which a discharge is sought. See *In re Kelly*, 841 F.2d 908, 913–14 (9th Cir.1988). Substantial abuse will occur if a debtor who has the ability to repay all or a substantial portion of the scheduled debts under a chapter 13 plan is granted relief under chapter 7. See *In re Hudson*, 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985).

Had debtors so chosen, they could have filed a joint petition under chapter 13 of the Code. They are individuals with regular income who owe less than $100,000 in noncontingent, liquidated debts and owe less than $350,000 in secured debts. See 11 U.S.C. § 109(e).

Granting debtors a discharge under chapter 7 would, in light of the circumstances presented in this case, constitute a substantial abuse of the provisions of chapter 7. Debtors are able to fund a chapter 13 plan which would repay at least a substantial portion of the debt owed to their creditors.

Debtors' bankruptcy schedules would seem at first glance to indicate that they lack the ability to so fund a chapter 13 plan. According to debtors, their monthly expenditures ($4,084.73) exceed their combined monthly income ($2,720.42) by $1,364.31. Nothing remains after their monthly expenditures with which they could pay creditors.

Certain expenditures listed by debtors are, however, objectionable. For instance, debtors at present are spending a total of $2,178.58 (or approximately 53% of their monthly net income) to pay certain favored prepetition credit card debts and a prepetition loan from the father of one of the debtors. Debtors, by voluntarily paying these unsecured prepetition creditors while paying other creditors nothing and seeking to enjoy a discharge with respect to the latter debts, are attempting to circumvent and/or to subvert the distribution scheme set forth at 11 U.S.C. § 726. Certain preferred general unsecured creditors, who have been selected by debtors, in effect would be paid ahead of other similarly situated creditors. Such a result is not in keeping with the priorities set forth at § 726 and would constitute an abuse of the provisions of chapter 7 of the Code.

If monthly payments totalling $2,178.58 to these preferred general unsecured creditors are deleted from debtors' monthly expenditures, debtors have available from their net monthly income at least $814.27 to fund a chapter 13 plan. A total of $29,-313.72 ($814.27 × 36 = $29,313.72) would

be available to pay creditors over a period of thirty-six (36) months. A total of $48,856.20 ($814.27 × 60 = $48,856.20) would be available over a period of sixty (60) months. Debtors would be able to pay a substantial portion of their indebtedness.

Debtors argue that even if the above payments totalling $2,178.58 are excluded they still are unable to fund a chapter 13 plan. Certain entries on the statement of monthly expenditures, debtors allege, are inaccurate in that they grossly understate the amounts actually spent. According to debtors, they actually spend $778.00 more per month for food, clothing, medical and dental expenses, haircuts, dining out, gifts, and pets than is reported on the statement of expenditures. Once this is taken into account, debtors argue, only $36.27 ($814.27 − $778.00 = $36.27) would be available per month to fund a chapter 13 plan.

Debtors' contention is without merit and accordingly must be rejected for several reasons. Debtors have come forward with no evidence showing that their monthly expenditures for the above items are approximately $778.00 greater than what is reported on a schedule prepared only a few months ago. In addition, attached to debtors' bankruptcy petition is a declaration signed by them under penalty of perjury that the schedules accompanying their bankruptcy petition are true and correct to the best of their knowledge, information, and belief. Were the court to find in favor of debtors in this matter, it effectively would be determining that debtors knowingly submitted a schedule which contained false and inaccurate information.

There is an additional reason why debtors' contention that they are unable to fund a chapter 13 plan must be rejected. Even assuming that debtors' monthly expenditures in reality do exceed the amounts stated in their statement of monthly expenditures, many of those expenditures are excessive. Debtors' life-style, as depicted in the bankruptcy schedules, is not spartan by any stretch of the imagination.

For instance, debtors expend $722.00 per month for rent and utilities (including cable TV), $58.00 per month for recreation and charitable contributions, and $166.00 per month for haircuts, dining out, gifts, and pets. These sums are excessive in light of the fact that debtors owe approximately $76,000 to creditors and have claimed as exempt virtually all of their assets which could be liquidated to make at least partial distribution to those creditors. Debtors filed for bankruptcy because they were living well beyond their means and could not pay their creditors. They obviously are determined to preserve their life-style at the expense of their creditors. Such a situation is not to be permitted.

In light of the fact that they voluntarily filed for bankruptcy, it would be reasonable to expect debtors to make a *bona fide* effort to reduce their standard of living. The savings realized from such a course of action would be considerable and would greatly increase their ability to fund a chapter 13 plan of reorganization that would repay their creditors.

Debtors' chapter 7 petition will be dismissed. However, the court will consider vacating the order of dismissal if debtors file a motion to reconsider within ten (10) days of the entry of this Order and request conversion to chapter 13 at that time.