**In re Lori Anne CHRISTIE, Debtor.**

**Bankruptcy No. 93–33288.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Sept. 14, 1994.

Anne–Jeannine Foeller, Toledo, OH, for debtor.

Derrick Rippy, Office of the U.S. Trustee, Cleveland, OH.

John Graham, Trustee, Toledo, OH.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST") motion to dismiss Lori Anne Christie's ("LAC") chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(b). Upon consideration of the evidence adduced at trial and the oral arguments of the parties, the Court finds that the UST's motion is well taken and should be granted. The Court shall grant LAC 10 days from the date of this order in which to voluntarily dismiss her chapter 7 case or convert her case to a case under chapter 13.

### FACTS

The debtor LAC filed a petition under chapter 7 of title 11 on November 18, 1993 ("the Petition Date").

LAC is 27 years old and earns a gross income of approximately $39,576.00 per year from her employment as a technician at Procter and Gamble. She has held this job for four years.

LAC testified that she was involved in an automobile accident in August of 1993 in which she received a bruised trachea and a sprained spinal cord (the "Accident"). LAC testified that she was unable to work and received disability insurance during the period from August 27, 1993 to November 5, 1993 as a result of the Accident. LAC also testified that she takes medication for asthma. LAC testified that her medical condition does not presently interfere with her ability to perform her job.

LAC listed $68,152.68 in secured claims on her bankruptcy petition. These claims include a debt owed to Society Mortgage Co. on her residence in the amount of $44,500.00 and a debt owed to Huntington National Bank on a 1993 Volkswagen Corrado in the amount of $23,652.68. LAC purchased these items in the summer of 1993.

LAC reaffirmed the debt owed on her residence. See Reaffirmation Agreement dated January 5, 1994. The 1993 Volkswagen Corrado was abandoned to Huntington National Bank. See Default Judgment Entry Granting Relief From Stay And Abandonment dated January 4, 1994. LAC has purchased a replacement vehicle which requires a monthly payment of $350.00.

LAC listed $5,872.51 in unsecured debts on her bankruptcy schedules. See Schedule F. LAC's bankruptcy schedules indicate that at least $3,178.08 of this unsecured debt was incurred in 1992 or thereafter. LAC's bankruptcy schedules do not disclose the date when the remaining $2,694.43 of unsecured debt was incurred.

LAC filed her bankruptcy schedules on November 18, 1993 (the "Schedules"). Thereafter on April 8, 1994, LAC filed amended schedules of income and expense (the "Amended Schedules").

The UST argued that the Amended Schedules represent a bad faith attempt by LAC to decrease income and increase expenses as listed on the Schedules in order to defeat the UST's motion. LAC argued that such amendments were necessary. LAC testified that, in preparing the Schedules, she failed to account for the fact that her income and expenses while she was on disability differed from the expenses which she incurred upon her return to work.

LAC testified that she increased the amount of income tax withheld from her pay in the approximate amount of $19.00 per week in February, 1994. This increased withholding is reflected as an increase to payroll deductions on the Amended Schedules. The sole rationale advanced by LAC for such increased withholding was her professed desire to obtain a larger income tax refund.

LAC testified that the increase in the scheduled amount for food of $109.00 per month reflects the fact that she is occasionally required to eat at restaurants because of

the distance between her home and her place of employment. LAC also testified that, at the time she completed the Schedules, she was on disability and was eating a number of meals at her parents house.

LAC testified that she increased the expense for recreation and entertainment in the amount of $250.00 per month on the Amended Schedules to reflect trips which she takes for family vacations approximately twice per year.

LAC increased the expenses listed on the Amended Schedules in the amount of $50.00 per month for amounts incurred in providing Christmas and birthday presents for her family.

## DISCUSSION
## APPLICABLE STATUTE

11 U.S.C. § 707(b) provides that:

[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

## WHETHER LAC'S DEBTS ARE PRIMARILY CONSUMER DEBTS

LAC's debts are primarily "consumer debts" as defined by 11 U.S.C. § 101(8). *Compare Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 912–13 (9th Cir.1988) (mortgage debt and home equity line of credit incurred for family or household purpose represented consumer debts); *with In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988) (mortgage debt secured by principal residence which debt was incurred with "an eye toward profit" did not represent consumer debt). Most significantly, the mortgage debt upon LAC's residence was incurred for a household purpose.

## WHETHER LAC'S BANKRUPTCY CASE REPRESENTS A "SUBSTANTIAL ABUSE" OF CHAPTER 7

The Sixth Circuit noted in *In re Krohn* that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *In re Krohn,* 886 F.2d 123, 126 (6th Cir. 1989); *see also U.S. Trustee v. Harris,* 960 F.2d 74, 76 (8th Cir.1992) (finding that " 'substantial abuse' " could not be equated with " 'bad faith' ").

**Lack of Honesty**

■ The nonexhaustive list of factors which a court should consider in determining whether a debtor is honest include:

[1.] the debtor's good faith and candor in filing schedules and other documents.

[2.] whether [the debtor] has engaged in 'eve of bankruptcy purchases,'

[3.] and, whether [the debtor] was forced into Chapter 7 by unforseen or catastrophic events.

*Krohn,* 886 F.2d at 126.

LAC has been less than candid in completing her bankruptcy schedules. The Court finds that LAC increased the amount of her weekly payroll deduction for income taxes in order to frustrate the UST's attempts to determine her true financial condition. *C.f. In re Dickerson,* 166 B.R. 480, 483 (Bankr. N.D.Ga.1993) (finding that debtor's failure to list sales commissions on original schedule of income filed with the court "represent[ed] a transparent attempt to conceal . . . disposable income"). Moreover, the Court cannot conclude that LAC has increased her scheduled expenditures for "[r]ecreation, entertainment, newspapers, magazines, etc." and "Christmas and Birthday Presents for family" in good faith. *C.f. In re Barnes,* 158 B.R. 105, 109 (Bankr.W.D.Tenn.1993) (finding the fact that debtors had "thought of new expenses to add [to their amended schedule of expenditures], . . . that did not appear on their first expense schedule" to be an indicia of bad faith).

Unquestionably, LAC's financial condition on the Petition Date was partially attributable to her disability because of the Accident. Notwithstanding this fact, the Court finds that LAC's financial problems can equally be

attributed to her purchase of a 1993 automobile and a home within several months of the Petition Date. LAC also incurred substantial unsecured debts in 1992 and 1993.

## Want of Need

The nonexhaustive list of factors which a court should consider in determining whether a debtor is needy include:

[1.] whether the debtor is able to repay [the debtor's] debts out of future earnings

[2.] whether the debtor enjoys a stable source of future income

[3.] whether the debtor is eligible for adjustment of the [debtor's] debts through Chapter 13 of the Bankruptcy Code

[4.] whether there are state remedies with the potential to ease [the debtor's] financial predicament

[5.] the degree of relief obtainable through private negotiations

[6.] and whether [the debtor's] expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126–27 (citation omitted).

The facts adduced at trial do not indicate that LAC is needy.

■ Although disagreeing as to whether a debtor's ability to repay prepetition debts will, taken alone, justify the dismissal of a chapter 7 case under § 707(b), "the majority of the cases hold that the debtor's ability to repay is the primary factor to be considered." *Green v. Staples (In re Green),* 934 F.2d 568, 572 (4th Cir.1991) (citations omitted); *see Harris,* 960 F.2d at 76 (finding that debtor's ability to fund chapter 13 plan can, standing alone, represent grounds for dismissal under § 707(b) (citation omitted); *In re Kelly,* 841 F.2d at 915 ("a finding that a debtor is able to pay [the debtor's] debts, standing alone, supports a conclusion of substantial abuse"); *see also In re Krohn,* 886 F.2d at 127 (stating that the ability to repay "alone may be sufficient to warrant dismissal").

■ LAC has substantial future earnings which could be devoted to paying her credi-

tors. Absent consideration of the additional withholding amounts of approximately $19.00 per week which have been deducted from LAC's weekly earnings, LAC's net monthly take home pay approximates $2,460.20.

LAC's budgeted monthly expenditure for "[r]ecreation ... and entertainment" appears unreasonable. LAC testified that this monthly expenditure consists of projected expenses for attending two family vacations per year. This Court, as the court in *In re Barnes,* "certainly does not quarrel with [LAC's] having a vacation. However, [her] ability to save for a vacation evidences the ability to accumulate funds for [her] own purposes while choosing not to save for repayment of unsecured debt." *In re Barnes,* 158 B.R. at 109; *see In re Buntin,* 161 B.R. 466 (Bankr.W.D.Mo.1993) (finding that debtors' scheduled expenditures which included monthly expenditure for five packs of cigarettes per day, $100.00 per month in vacation expense and $275.00 per month for recreation were unreasonable); *see also In re Wray,* 136 B.R. 122, 125 (Bankr.W.D.Pa. 1992) (finding that scheduled monthly expenditures of $58.00 for recreation and charitable contributions were excessive); *In re Goodson,* 130 B.R. 897, 901–02 (Bankr. N.D.Okl.1991) (finding scheduled recreation expenditures of $100.00 per month to be excessive); *In re Roth,* 108 B.R. 78, 80 (Bankr. W.D.Pa.1989) (finding that scheduled monthly expenditures which included $100.00 for recreation and $74.00 for daughter's piano lessons were unreasonable); *In re Newsom,* 69 B.R. 801, 805 (Bankr.D.N.D.1987) (finding that debtors' budgeted monthly expenditures which included $100 per month for recreation and $150.00 per month in "'walking around' money'" were unreasonable); *cf. In re Veenhuis,* 143 B.R. 887 (Bankr.D.Minn.1992) (finding debtor's proposed expenditure of $85.43 per month for recreational boat to be unreasonable); *In re Richmond,* 144 B.R. 539, 542 (Bankr.W.D.Okl.1992) (stating that "[the] court [did] not believe that debtors' unsecured creditors should be required to contribute to the voluntary support of family members who [were] not dependents of the debtors, or to in effect pay the expenses of debtors' recreational vehicle").

Further, the Court finds that LAC's scheduled monthly expenditure for "Christmas and birthday presents for family" in the amount of $50.00 per month is unreasonable. *See In re Kelly,* 841 F.2d at 915, n. 9 (noting that expenditures for " 'going out to dinner, entertaining people[,] ... buying toys for the kids or going to the movies' " were unreasonable) (citing § 1325(b)(2)(A)); *In re Wray,* 136 B.R. at 125 (finding that scheduled monthly expenditures of $166.00 for "haircuts, dining out, gifts and pets" were excessive).

LAC's total monthly expenses approximate $2,083.00 after elimination of increases in expense items for "[r]ecreation, clubs and entertainment, newspapers, magazines, etc." of $250.00 per month and "Christmas and birthday presents for family" in the amount of $50.00 per month. Therefore, LAC has substantial monthly earnings which could be devoted to repayment of her debts without depriving her of food, clothing, shelter and other necessities.

LAC has a stable source of income. She has held the same job for over four years.

LAC appears to be eligible for chapter 13 protection.

Although LAC testified that she attempted to negotiate a payment arrangement with Huntington National Bank with regard to the Volkswagen which she formerly owned, LAC has not provided the Court with any documentation to support this testimony. The Court grants little weight to such undocumented assertions. Moreover, LAC did not provide any evidence that she attempted to obtain relief through negotiating payment arrangements with her other creditors. As a result, the Court cannot conclude that relief in the form of private negotiations is unavailable to LAC.

### CONCLUSION

The UST has overcome the "presumption in favor of granting the relief requested". Further, dismissal of LAC's petition under 11 U.S.C. § 707(b) as a substantial abuse of chapter 7 is warranted.

In light of the foregoing, it is therefore

ORDERED that the United States Trustee's motion be, and hereby is, granted. It is further

ORDERED that Lori Anne Christie be granted 10 days from the date of this order in which to dismiss her chapter 7 case or convert it to a case under chapter 13; otherwise, her chapter 7 case shall be dismissed without further notice or hearing.