**In re Lerona Renay BAKER, Debtor.**

No. 08–13987.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Jan. 30, 2009.

Reginald D. Williams, Shaker Heights, OH, for Debtor.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the United States Trustee's ("U.S.Trustee") motion to dismiss the Chapter 7 case of Lerona R. Baker (the "Debtor"), pursuant to §§ 707(b)(1) and 707(b)(3) of the Bankruptcy Code. *11 U.S.C. §§ 707(b)(1) and 707(b)(3).* The motion is opposed by the Debtor. Core matter jurisdiction is acquired under *28 U.S.C. § 1334* and General Order No. 84 of this District. Following the conclusion of a duly noticed evidentiary hearing, an examination of the evidence admitted, and consideration of the record, generally, the following conclusions of law and findings of fact are hereby rendered:

\*

Certain dispositive facts are stipulated by the parties, which include:

The Debtor currently resides in Sandy Springs, Georgia and has lived there throughout the pendency of her bankruptcy case and is employed as an accountant by Robert Half International ("Robert Half"). She has secured debts of $225,891.76. Among the Debtor's scheduled secured claims are mortgage debts for two real properties—a two-family house used as Debtor's former residence, located at 8209 Goodman Avenue, Cleveland, Ohio, and a single-family house used as rental property, located at 3818 East 186th Street, Cleveland, Ohio. The Debtor scheduled a priority claim of $2,000 owed to the Internal Revenue Service ("IRS") and general unsecured claims of $50,175.38. The Debtor's debts are primarily consumer debts. According to the Debtor's Statement of Intention, she is surrendering both real properties. The

Debtor's Schedule I (Monthly Income) indicates that the Debtor earns above median income, with gross monthly income of $5,375.72 and net monthly income of $3,945.94. According to her initial Schedule J (Monthly Expenses), her expenses are $3,964.00, with several expenses allocated in support of her 20 year-old daughter's college-related expenses ($400 for rent, utilities, and food; $220 for tuition; and $100 for books). Also in the initial Schedule J is a statement by the Debtor that she will begin repaying $300 per month towards her own student loan. The Debtor is divorced and has only one child.

The Debtor's testimony produced other relevant facts. She earned a bachelor's degree in accounting in 2001 and a master's degree in business administration in 2005. She has been employed at Robert Half for less than two years on a contractual basis in the State of Georgia. Her contract is scheduled to expire at the end of January 2009. The record does not indicate whether such contract is renewable. Prior to her current employment, she was unemployed for 3–4 months after her employment at another company for a year and several months. (Debtor, Direct).

The Debtor is the sole supporter of her 20 year-old daughter, Lauren Baker, who lives and attends college in Cleveland, Ohio. The daughter has been living on her own for approximately two years while attending college full-time. Previously, she lived with the Debtor at the former family residence. Both real properties are the subjects of foreclosure proceedings.

An amended Schedule J was filed following the U.S. Trustee's motion to dismiss. The changes to the Debtor's expenses include monthly payments of $349 towards the Debtor's student loan which she obtained to fund her graduate studies, $121 towards the I.R.S.' priority tax claim, and a reduced contribution of $220 to her daughter. Compared to the Debtor's net monthly income of a negative $18.06 in her initial Schedule J, the Debtor's amended Schedule J now shows a monthly net income of a negative $108.06.

\* \*

The dispositive issue for the Court's determination is whether allowing the Debtor to prosecute her case under Chapter 7 constitutes an abuse of the bankruptcy process under §§ 707(b)(1) and 707(b)(3) of the Bankruptcy Code.

\* \* \*

The U.S. Trustee alleges that the following expenditures by the Debtor are abusive: 1) expenses paid by the Debtor for her 20 year-old college student; and 2) the Debtor's repayment of her own student loan balance, while not paying other scheduled unsecured creditors.

The Debtor contends that she, as the sole supporter of her daughter, is not abusing the bankruptcy process by paying her daughter's college tuition and related expenses. The Debtor further asserts that she is required to commence payments on her own student loan balance, as any deferral or moratorium periods have expired. The Debtor argues it is permissible for her to pay her student loan lender without paying her other unsecured creditors.

\* \* \* \*

In pertinent part, § 707(b)(1) provides;

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the

granting of relief would be an abuse of the provisions of this chapter ...

*11 U.S.C. § 707(b)(1).*

Section 707(b)(3) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider—

 (A) whether the debtor filed the petition in bad faith; or

 (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

*11 U.S.C. § 707(b)(3).*

■ The burden of proof to support a dismissal motion under §§ 707(b)(1) and 707(b)(3) is upon the movant U.S. Trustee. Such burden is to be carried by a preponderance of the evidence standard of proof. *In re Oot,* 368 B.R. 662, 665 (Bankr. N.D.Ohio 2007). Once a prima facie case is established by the movant, the burden of going forward with sufficient evidence to controvert the prima facie case is reposed in the non-moving party.

■ The fundamental purposes of bankruptcy law in the United States is two-fold: 1) to ensure that an honest but financially distressed debtor receives a fresh start; and 2) to ensure that the debtor's claimants receive an equitable dividend from the debtor's bankruptcy estate, if such is available. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Krohn,* 886 F.2d 123, 127–28

(6th Cir.1989). *See,* also, *15 Collier on Bankruptcy,* ¶ *1.03 at [2]* (15th ed.1998). See, *Krohn, supra,* 886 F.2d at 127 (citing *United States v. Kras,* 409 U.S. 434, 446– 47, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), "[t]here is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy.").

■ Under § 707(b)(3), courts are to apply a "totality of the circumstances" test to determine whether an abuse of process will result if a Debtor is allowed to continue the prosecution of a Chapter 7 case. In considering whether the totality of the circumstances of the Debtor's financial situation demonstrates abuse pursuant to § 707(b)(3), the Court should consider if the Debtor has the ability to pay her unsecured debts through a Chapter 13 plan. *In re Burton,* 379 B.R. 732, 736 (Bankr. N.D.Ohio 2007) (citations omitted). "Courts examine a debtor's disposable income to determine whether he has the ability to pay unsecured debt." *Id.* Disposable income is the income remaining after a debtor has made deductions for reasonably necessary expenses for the maintenance and support of the debtor or the debtor's dependents. *In re Stewart,* 383 B.R. 429, 432 (Bankr.N.D.Ohio 2008).

The term "abuse" is not defined statutorily,[1] nor is the phrase "totality of the circumstances." However, two pre-BAPCPA Sixth Circuit cases provide guidance on the factors relevant to a "totality of the circumstances" test. In *Krohn, supra,* the Sixth Circuit opined the following:

 A court would not be justified in concluding that a the debtor is needy and worthy of discharge, where his disposable income permits liquidation of his

---

[1]. Pre–BAPCPA, the standard for dismissal under § 707(b) was "substantial abuse." Under BAPCPA, a lower threshold has been adopted.

See *In re Davis,* 378 B.R. 539, 546 (Bankr. N.D.Ohio 2007) and *11 U.S.C. § 707(b)(3).*

consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

886 F.2d at 126. The Sixth Circuit reaffirmed in *Behlke v. Eisen (In re Behlke),* 358 F.3d 429, 433 (6th Cir.2004), the principles espoused in *Krohn,* that substantial abuse is predicated on a showing of either lack of honesty or want of need.

█ Herein, there has been no showing of a bad faith filing by the Debtor so dismissal of the Debtor's case cannot be based on the Debtor's lack of honesty. However, whether the Debtor is in "need" of Chapter 7 bankruptcy relief is a matter for consideration. She is eligible for Chapter 13 relief. Based on her petition schedules, her assets versus her liabilities reveal a consumer debtor who is financially distressed ($148,550.00 in assets versus $278,067.14 in liabilities). (Exh. B–1). Her net income, which is the difference between the expenses in amended Schedule J and her income in Schedule I, is an undisputed negative $108.06. (Exhs. B–1 and F). She currently works out-of-state as a contract employee (accountant) and has been in this capacity for approximately 15 months. (Debtor, Direct and Cross). Her employer, Robert Half, is a recruiting and staffing agency that specializes in placing candidates in various positions within corporations, including accounting and finance. No evidence has been shown to indicate whether her contract will be renewed or not. (Debtor, Direct). These findings, coupled with the fact that the Debtor is losing her home and her rental property through foreclosure proceedings, underscores a level of financial distress and the Debtor's need for debt relief.

█ The U.S. Trustee objects to two expenses listed in the Debtor's Schedule J. The first expenditure, payments by the Debtor on behalf of her daughter, is the subject of disagreement among courts. The majority of courts has held that a debtor may not pay for his or her child's expenses of attending college when the unsecured creditors are not paid in full. *See, In re McNulty,* 142 B.R. 106, 110 (Bankr.D.N.J.1992)("[T]his court is not of the view that a debtor's creditors should pay tuition for the debtor's children."); *In re Staub,* 256 B.R. 567, 570–571 (Bankr.M.D.Pa.2000)("[E]ducational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors."). This is because debtors, in general, do not have a legal obligation to support their children after they reach the majority age. *In re Pfahler,* No. 07–30044, 2007 WL 2156401, at *1 (Bankr.N.D.Ohio July 26, 2007). Thusly, absent some special circumstance, the expense is generally disallowed. *In re Patterson,* 392 B.R. 497, 506 (Bankr.S.D.Fla.2008).

Notwithstanding, a small minority of courts allows debtors to take deductions for college expenses of the debtors' children, based on a moral obligation of parents to support their children. These courts view some adult children as not wholly independent, after taking into account the ages, type of degrees being pursued, work experiences and overall characteristics of the children at issue. "[D]ebtors may continue to assist (i.e. support) a child, who notwithstanding having attained majority, has not yet 'left the

nest ...'" *Gonzales,* 157 B.R. at 610–11. *Gonzales* is factually similar to the instant case in that in both scenarios, the adult children are relatively young, pursuing baccalaureate or associate degrees at modest schools, and living away from home, except *Gonzales* involved a Chapter 13 plan in a Chapter 13 proceeding. According to the *Gonzales* court, "[t]he debtors' children, although above the age of majority, have within society's current expectations reasonably not yet left the nest." *Id.* at 611. Accord, *In re Tefertiller,* 104 B.R. 513 n.1 (Bankr.N.D.Ga.1989).

Herein, the Debtor lives and works in Georgia while her daughter lives and attends school full-time in Ohio. Her daughter is two years above majority age and is an unemployed full-time student, but has previously maintained a part-time job. Significantly, the Debtor and her daughter both attempted to obtain loans to fund her daughter's college education, but were denied because of the Debtor's credit rating. (Debtor, Direct). As a result, the daughter depends entirely on her mother for financial support, although the daughter does not have any physical or mental impairment that would affect her ability to seek employment. The Debtor's amended Schedule J seeks to reduce the Debtor's contribution to her daughter from $720 to $220. The Debtor did not explain how her daughter will subsist without the $500 in support from her mother or whether there will be another source of funding for her daughter. Therefore, the Debtor's assertions that her daughter relies solely on her for financial support and that the expenses she incurs on behalf of her daughter are reasonable and necessary are unclear. Further, no explanation was given as to

why the Debtor and her daughter are not living together so as to reduce their living expenses. As such, the Debtor has not shown a special circumstance in support of her assertion that her voluntary payments towards her daughter's educational expenses are permissible deductions from her income.

It is not apparent that the Debtor has made every reasonable effort to mitigate her monthly expenses. Clearly, supporting an emancipated daughter, who presents no exceptional requirements, is discretionary spending. As the daughter formerly resided with the Debtor, no testimony was given to explain why the daughter could not continue to reside with the mother (Debtor) or other relatives to mitigate expenses. The Debtor's decision of supporting her emancipated daughter, to the detriment of scheduled unsecured creditors who are receiving less than full satisfaction on their respective claims, is contrary to the letter and spirit of the Bankruptcy Code.

 The second expenditure, repayment of the Debtor's student loans, while not paying other unsecured creditors, is widely held as impermissible. Applying the principle of ratable distribution, the majority of courts has concluded that a debtor may not pay one unsecured creditor over other unsecured creditors.[2] *In re Wray,* 136 B.R. 122, 124 (Bankr.W.D.Pa. 1992); *In re Lang,* No. 07–31744, 2007 WL 2777770, at *3 (Bankr.N.D.Ohio Sept. 24, 2007). "Ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws." *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1453 (6th Cir. 1994). *See,* also, *Begier v. I.R.S.,* 496 U.S.

---

**2.** This Court had previously held, in the context of Chapter 7 proceedings, that the repayment of a 401k loan is not a proper deduction from a Debtor's disposable income, regardless

if the 401k loan is a secured debt. *Davis,* 378 B.R. at 549; *In re Burton,* 379 B.R. 732, 736–37 (Bankr.N.D.Ohio 2007).

53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Like other general unsecured debts, student loans are largely unsecured and are not accorded priority treatment under the Bankruptcy Code. The fact that student loans are nondischargeable, except proof of undue hardship, under *11 U.S.C. § 523(a)(8)*, by itself, is not a basis for giving favorable treatment to student loan lenders. *See, In re Nolan*, No. 07–33572, 2008 WL 2121143, at *3 (Bankr.N.D.Ohio May 20, 2008); *In re Reimer*, No. 07–32787, 2008 WL 495537, at *4 (Bankr. N.D.Ohio Feb. 21, 2008); *In re Kaminski*, 387 B.R. 190, 197 (Bankr.N.D.Ohio 2008).[3] As several courts have noted, a debtor, who voluntarily pays one unsecured prepetition creditor while paying other creditors nothing and who seeks to enjoy a discharge with respect to the latter debts, is attempting to circumvent and/or subvert the distribution scheme set forth at *11 U.S.C. § 726*. *Wray*, 136 B.R. at 124; *Lang*, 2007 WL 2777770, at *3.

As an exception to the general rule, a small minority of courts has permitted debtors to reduce their disposable income with payments towards their student loan obligations. This has occurred where debtors have shown special circumstances, such as overwhelmingly large student loans juxtaposed with a small remainder of other unsecured debts. *In re Thurston*, No. 07–35092, 2008 WL 3414138, at *5 (Bankr.N.D.Ohio Aug. 8, 2008). In *Thurston*, the court permitted the preferential treatment accorded to the student loan obligations where the Debtor's student loans were $160,000 out of a total of $180,000 in unsecured debt. The *Thurston* court concluded that there was little benefit inuring to the creditors from a Chapter 13 plan but a lot of harm to the Debtor's ability to obtain a "fresh start" if Chapter 7 relief was not granted. *Id.* Herein, the majority view is followed.

The Debtor's student loan debt is $35,000 while her other unsecured debts are approximately $15,000. Her student loan obligations are not of such magnitude that she cannot repay them over a reasonable period of time. The Debtor testified, without substantiation, that she was unable to make any payments towards her student loan since she graduated from her master's program. Notedly, she has been gainfully employed since she received her master's degree, except for a brief period of unemployment. As such, the Debtor has not provided a persuasive reason for treating her student loans more favorably than other unsecured debt, in contravention to the principle of equality of distribution among similarly situated creditors. Thusly, the student loan expense is not a proper deduction against the Debtor's income.

Herein, the Debtor has minimal assets for distribution under a Chapter 7 proceeding. If the Debtor's property was liquidated, her unsecured creditors would receive an approximate dividend of 2% (Debtor's nonexempt property ($950) divided by the amount of unsecured debt ($50,175.38)). Meanwhile, under a Chapter 13 plan, her unsecured creditors can

---

**3.** A similar debate is occurring in Chapter 13 proceedings, where courts have disagreed as to the validity of favorable discrimination for student loans in debtors' Chapter 13 plans. Some courts permit the discriminatory treatment on the sole basis that student loans are nondischargeable; thus, such lenders can be paid a higher dividend than other unsecured creditors. See *In re Boggan*, 125 B.R. 533, 534 (Bankr.N.D.Ill.1991); *In re Gregg*, 179 B.R. 828, 830 (Bankr.E.D.Tex.1995). However, these opinions have been criticized by other courts for the concept that the nondischargeability of student loans in a Chapter 13 case is an insufficient basis, by itself, to warrant discrimination in favor of such creditors. *In re Tucker*, 150 B.R. 203, 205 (Bankr. N.D.Ohio.1992); *In re Lawson*, 93 B.R. 979, 988–990 (Bankr.N.D.Ill.1988).

potentially receive a return of more than 50%, assuming the Debtor provides $469 per month to fund a plan of 60 months, after subtracting payments for trustee statutory fees and attorney legal fees. The Debtor has a monthly net income of $469 after $220 attributed to the Debtor's daughter's expenses and $349 attributed to the Debtor's loan repayment are deducted from the Debtor's amended Schedule J. Granting a discharge to the Debtor, when her unsecured creditors will receive 2% dividends while her student loan creditor receives a 100% dividend, will violate the principle of equitable distribution to creditors. *Krohn,* 886 F.2d at 127–28; *Omegas Group,* 16 F.3d at 1453.

Lastly, the Debtor's statement that her current employment is unstable is conclusory and not supported by any evidence. She testified that in November 2008, her employer laid off several employees. But, she has not provided any indication that her job was in peril. (Debtor, Direct). According to Debtor's pay advices, she is working at J.M. Huber Corporation ("J.M.Huber") but is paid by Robert Half. (Exh. 3). It is unclear whether the layoffs that Debtor alluded to occurred at Robert Half or at J.M. Huber. The former is a recruiting and staffing agency that places candidates in various positions with various companies. Although the Debtor's employment with Robert Half is contractual, there is no evidence of record to indicate that her continued employment is in jeopardy. Moreover, the Debtor has not demonstrated that she will incur difficulty in finding new employment once her present contract expires. "Beyond vague statements that [her] financial situation could worsen, the [Debtor was] unable to make such a showing." *Reimer,* 2008 WL 495537, at *4. *See,* also, *Behlke,* 358 F.3d at 437.

Accordingly, the Debtor has the ability to repay a portion of her debts through a Chapter 13 plan for the applicable 60 month period for above-median income debtors. Thusly, the Debtor is not "needy" of the Chapter 7 bankruptcy relief sought as set forth in *Behlke* and *Krohn, supra.*

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, the Trustee's motion to dismiss for abuse is granted. The Debtor's objection is overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.

### *JUDGMENT*

**A Memorandum Of Opinion And Order having been rendered by this Court in this matter.**

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the United States Trustee's motion to dismiss this Chapter 7 case for abuse pursuant to 11 U.S.C. §§ 707(b)(1) and 707(b)(3) is hereby granted. The Debtor's objection is overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**