**In re Parameshwar SRIKANTIA,
Debtor.**

**No. 09–11414.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Oct. 29, 2009.

Stephen D. Hobt, Cleveland, OH, for Debtor.

### *MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court on the Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and (3) (the "Motion") filed by the United States Trustee for Region 9 (the "Trustee") over the objection of Parameshwar Srikantia (the "Debtor").

This Court acquires core matter jurisdiction over this matter pursuant to 28

U.S.C. §§ 157(a), (b)(1), 28 U.S.C. § 1334 and General Order No. 84 of the District.

A hearing was held upon due notice to all entitled parties. After considering the record, generally, arguments of counsel and evidence adduced, the following constitutes the Court's factual findings and conclusions of law.

*

On February 26, 2009, the Debtor, a college professor, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. The Debtor is employed full-time and has one child, a son, age 12. The Debtor shares joint custody of his son with his ex-wife. His present wife is also a full-time college professor at another institution located out of state. This petition is the Debtor's only bankruptcy filing.

The parties stipulated that the Debtor's non-filing spouse's annual income is $69,000.00, and that the IRS National Standards, referenced as UST Exhibit 12, may be used in the course of the hearing.

* *

The dispositive issue before this Court is whether the Debtor's petition for relief, as amended, constitutes an abusive filing.

* * *

The Trustee asserts that, under the totality of the circumstances, granting the Debtor a Chapter 7 discharge would be an abuse under 11 U.S.C. § 707(b)(3). The Trustee contends that a number of the Debtor's scheduled expenses are either excessive or wholly inappropriate. He further asserts that, although the Debtor and his current spouse are maintaining separate households, several of the expenses claimed still appear excessive. Additionally, the Trustee asserts that the Debtor's high income level suggests that the case is abusive and that the Debtor is able to repay creditors given that his income is stable and a number of his expenses could be reduced without depriving him or his family of necessities.

The Debtor opposes the relief sought by the Trustee. The Debtor contends that his scheduled expenses to which the Trustee objects are necessary expenses. He further asserts that his high food expense is necessary because his son suffers from "cluster migraines" and "stab-and-jab headaches" that are exacerbated by food additives, making it necessary for the Debtor to buy organic food whenever possible. The Debtor asserts that his transportation expense is necessary because he commutes to two separate campuses for work. The Debtor further asserts that his son is extremely introverted, and the scheduled summer camps and various art and music lessons have been recommended by therapists and are necessary for his development. He further contends that his income is not as stable as the Trustee suggests. The Debtor contends that his previous high income level resulted from teaching a number of "overload" classes, and the College recently began pressuring him to teach fewer classes.

* * * *

Section 707 of the Bankruptcy Code provides for dismissal of a Chapter 7 case or conversion to a case under chapter 11 or 13. A case is dismissed where a court finds that the granting of relief would constitute an abuse of the Chapter 7 provisions.

Title 11 U.S.C. § 707(b) states the following:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case

filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

Section 101(8) of the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose."

If the presumption of abuse does not arise under Section 707(b)(2), or is rebutted, then the court considers the totality of the circumstances under 11 U.S.C. § 707(b)(3):

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") has amended the Bankruptcy Code in ways that impact the present Motion. First, BAPCPA removed the express presumption in favor of granting the relief requested by the debtor and, second, BAPCPA added § 707(b)(3) to the Bankruptcy Code as an additional basis for dismissal of a Chapter 7 debtor's bankruptcy case. *See* 11 U.S.C. § 707(b).

Pre–BAPCPA, a United States Trustee seeking dismissal of a chapter 7 case bore the burden of overcoming the strong presumption in favor of granting the discharge requested by the debtor. *In re Farrell,* 150 B.R. 116, 118 (Bankr.D.N.J. 1992). Historically, courts treated the pre-BAPCPA presumption in favor of granting the relief requested by the debtor as a "caution and reminder" for the court to "give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present." *In re Kelly,* 841 F.2d 908, 917 (9th Cir.1988); *see also In re Krohn,* 886 F.2d 123 (6th Cir.1989). BAPCPA eliminated the substantial abuse standard utilized in determining if a debtor's case required dismissal and adopted a lower standard of abuse in considering a motion under § 707(b). *See* 11 U.S.C. § 707(b)(3).

Pre–BAPCPA, a debtor's case could be dismissed for substantial abuse based upon either lack of honesty or want of need. *See Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004); *see*

*also In re Krohn,* 886 F.2d 123 (6th Cir. 1989). BAPCPA codified the lack of honesty and want of need factors under § 707(b)(3). Therein, a debtor's case can be dismissed for abuse upon either bad faith (i.e. lack of honesty) or where the totality of the circumstances of the debtor's financial situation demonstrates abuse (i.e. want of need). 11 U.S.C. § 707(b)(3); *See In re Oot,* 368 B.R. 662, (Bankr. N.D.Ohio 2007); *In re Wright,* 364 B.R. 640, (Bankr.N.D.Ohio 2007); *In re Henebury,* 361 B.R. 595 (Bankr.S.D.Fla.2007); *In re Mestemaker,* 359 B.R. 849 (Bankr. N.D.Ohio 2007); *In re Simmons,* 357 B.R. 480 (Bankr.N.D.Ohio 2006). "It is a closely related fundament of statutory construction that, where Congress codifies prior ease law, those prior holdings remain not only good law, but should serve as a valuable touchstone for interpreting the statute." *In re Oot,* 368 B.R. 662, 666 (Bankr. N.D.Ohio 2007) *(citing CoStar Group Inc. v. LoopNet, Inc.,* 373 F.3d 544, 553 (4th Cir.2004)). Therefore, pre-BAPCPA decisions provide sound guidance and are instructive in evaluating motions to dismiss.

Section 707(b)(3) grants a court the authority to dismiss a Chapter 7 case, where the presumption of abuse does not arise, for either bad faith or the totality of the circumstances if the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3). Because there have been no allegations of bad faith brought by the Trustee against the Debtor, the Court's consideration herein is focused on the totality of the circumstances.

The Bankruptcy Code does not define the phrase "totality of the circumstances." Notwithstanding, two pre-BAPCPA Sixth Circuit Court of Appeals decisions, *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004) and *In re Krohn,* 886 F.2d 123 (6th Cir.1989), provide guidance regarding the totality of the circumstances test for dismissal under § 707(b). Among the factors to be considered in deciding whether the totality of the circumstances warranted a dismissal of the debtor's case under § 707(b), the *Krohn* court opined:

> A court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn,* 886 F.2d at 126; *accord Behlke v. Eisen,* 358 F.3d at 435. Additionally, to meet the burden established in 11 U.S.C. § 707(b) for dismissal, the Trustee, who is the moving party, must prove by a preponderance of the evidence that the debts in question are consumer debts, and that granting relief would constitute abuse. *In re Browne,* 253 B.R. 854, 856–857 (Bankr.N.D.Ohio 2000).

To determine whether a debtor can significantly reduce his expenses, courts will look to the debtor's scheduled expenses to determine their reasonableness. *In re Mooney,* 313 B.R. 709, 715 (Bankr.N.D.Ohio 2004). This is not to say, however, that a court must simply accept the expense amounts a debtor schedules as necessary. In determining the reasonableness of a debtor's expenses, a court must scrutinize those provided expenses and may "make downward adjustments where necessary." *In re Felske,* 385 B.R.

649, 655 (Bankr.N.D.Ohio 2008). Although a debtor need not reduce his expenses in such a way that he is living in poverty, the Bankruptcy Code envisions some sacrifice on the debtor's part in granting him relief. *Id.* at 656. A court need not get bogged down in minute details of the debtor's expenses, but the debtor must demonstrate that he is making some sacrifices to repay unsecured creditors. *In re Mars,* 340 B.R. 844, 850 (Bankr.W.D.Mich.2006).

\*    \*    \*    \*    \*    \*

■ On the first page of his original bankruptcy petition, the Debtor identified the nature of his debts as "consumer/non-business". The Debtor scheduled three secured claims. The first claim is a $5,371.69 car loan, which the Debtor intends to reaffirm and retain the vehicle. *See Debtor's Schedule D* and *Debtor's Statement of Intention.* The remaining secured claims are a first and second mortgage secured by the Debtor's personal residence, totaling $84,597.08 and $ 10,743.48, respectively. *See Debtor's Schedule D.* He intends to surrender the residence, which currently is the subject of a foreclosure proceeding pending in the Cuyahoga County Court of Common Pleas. *See Debtor's Statement of Intention* and *Debtor's Statement of Financial Affairs.* He scheduled two unsecured priority tax claims totaling $4,059.30. *See Debtor's Schedule E.* The Debtor scheduled five unsecured nonpriority claims, consisting entirely of credit card debt, in the amount of $41,054.94. *See Debtor's Schedule F.*

Concurrent with the filing of his voluntary petition, the Debtor filed the required Statement of Current Monthly Income and Means Test Calculation, Form B22A (hereinafter, the "Means Test"). The Trustee reviewed the papers filed by the Debtor and determined that the Debtor's case is not presumed to be an abuse pursuant to 11 U.S.C. § 707(b). The Trustee filed a Motion to Extend Time in Which to File a Motion to Dismiss, citing the need to obtain the financial information of the Debtor's non-filing spouse. Subsequent to the granting of that Motion by this Court, the Debtor filed Amended Schedules I and J reflecting his non-filing spouse's income and expenses.

The Debtor's Means Test lists his gross monthly income as $7,289.16, for an annualized income of $87,469.92. *See Debtor's Means Test Calculation Form 22A.* The Debtor's Means Test lists a household size of 2. *Id.* The Debtor's annualized income exceeds the applicable median family income of $50,965 for a family of two in Ohio. *See* http://www. usdoj.gov/ust/eo/bapc-pa/20081001/bci_data/median_income_table.htm (median income amount for a debtor, who is an Ohio resident, with a family of two and filed a bankruptcy case between October 1, 2008 and March 14, 2009). The Debtor's Amended Schedule J lists his wife's monthly gross income as $5,750.00 for an annualized gross income of $69,000.00. *See Debtor's Amended Schedule J,* Line 1.

The Debtor made several modifications on his Amended Schedule J. He scheduled the following monthly expenses:

| Item | Monthly Expense |
| --- | --- |
| House cleaning | $ 83 |
| Cellular telephone | $175 |
| Home maintenance | $100 |
| Food | $700 |
| Transportation | $400 |
| Books and CDs for son | $100 |
| Storage (wife's furniture) | $100 |
| Art lessons for son | $120 |
| Drum lessons for son | $ 80 |
| Summer camps for son | $375 (annualized) |

*See Debtor's Amended Schedule J.* The Debtor's Amended Schedule J shows a negative monthly net income of $159.97.

In determining whether the totality of the circumstances of a debtor's financial situation demonstrates abuse pursuant to § 707(b)(3), a court should consider the debtor's ability to repay his creditors out of future earnings. *In re Krohn,* 886 F.2d at 126. Herein, the Debtor is gainfully employed as a full-time college professor and has been for a sustained period of time, eight years, He earns an above-median income for his family size and geographical location, without including his non-filing spouse's income. The Debtor enjoyed substantial income in the years prior to filing bankruptcy, earning a gross salary of $103,418.36 in 2007 and $106,730.74 in 2008. *See Debtor's Statement of Financial Affairs.* Substantial income weighs in favor of abuse. *See In re Wadsworth,* 383 B.R. 330, 333 (Bankr. N.D.Ohio 2007)("Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization."). The Trustee acknowledges that, without an adjustment in expenses, the Debtor cannot fund a Chapter 13 plan. The Debtor's apparent inability to fund a Chapter 13 plan, however, is not determinative on the issue of abuse. *In re Krohn,* 886 F.2d at 127 ("[I]nability to qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy.").

At the evidentiary hearing, the Debtor testified that his high level of income is the result of teaching "overload" classes beyond his required teaching load. (Srikantia, P., Direct). He testified that his employer has been pressuring him to reduce his teaching load as a result of lower student enrollment, thus reducing his income. *Id.* He also testified that it was not possible to predict the exact reduction in his income without knowing which classes he would be required to drop. (Srikantia, P., Cross). This Court found the Debtor's testimony generally credible with respect to his income level. Despite the uncertainty of the Debtor's future income level, the Debtor testified that his base salary is $68,000, without including any overload classes, and at present he continues to teach a number of overload classes (Srikantia, P., Direct). Even if the Debtor's teaching load consisted only of his required course load, Debtor still earns a substantial income and is still well above the median income for his family size and location. Further, it appears that the Debtor enjoys a stable future income from which creditors could be repaid.

The Trustee objected to the following expenses from Debtor's Amended Schedule J:

| Line | Listed Expense |
| --- | --- |
| Line 2(d): House cleaning | $ 83 |
| Line 2(d): Cellular telephone | $175 |
| Line 3: Home maintenance | $100 |
| Line 4: Food | $700 |
| Line 8: Transportation | $400 |
| Line 17: Books and CDs for son | $100 |
| Line 17: Storage (wife's furniture) | $100 |
| Line 17: Art lessons for son | $120 |
| Line 17: Drum lessons for son | $ 80 |
| Line 17: Summer camps for son (annualized) | $375 |

The Trustee also questioned the reasonableness of the Debtor's "professional expenses" in the amount of $270.72 per month and airfare expenses of $337.55 per month. (Debtor's Exh. D).

The Debtor testified that he no longer pays for a house cleaning service; that his home maintenance expense results from living in an older home and required numerous repairs to remedy code violations;

that his son's medical condition is exacerbated by food additives, and he spends extra to purchase organic food to alleviate his son's symptoms; that his transportation expense was not unreasonable because he commutes between two separate campuses for work purposes. (Srikantia, P., Direct). He also testified that he pays his wife's monthly storage expense because he is generally responsible for the bills that arise in Ohio. (Srikantia, P., Cross). Other testimony reveals that he occasionally calls family in India using his cellular phone, and that is the main method he uses to keep in touch with his wife, resulting in a higher expense. *Id.* With respect to the amount of his expenses, this Court found the Debtor's testimony to be generally credible. The Debtor further testified that his son's medical condition makes him extremely withdrawn socially and introverted, and therapists recommended the various art lessons, music lessons, books and CDs, and numerous summer camps to further his development. (Srikantia, P., Direct). During the summer of 2009, the Debtor's son attended several weeks of camp, including two week-long music camps, a video production camp, and two other local camps. (Debtor's Exh. D). In addition to the camp tuition, Debtor purchased a $1,400 drum set for his son, stating that these music camps required his son to have advanced equipment. (Debtor's Exh. D; Srikantia, P., Cross). In addition to these expenses, the Debtor testified that his ex-wife pays for their son's guitar lessons. (Srikantia, P., Cross). Although the Debtor's son receives medical treatment for his migraines, the Debtor offered no evidence to show that his son requires organic foods or that the music and art lessons and camps are necessary. In this regard, the Debtor's testimony is conclusory and unsubstantiated.

A bankruptcy analyst from the Trustee's office offered testimony regarding his examination of the Debtor's expenses. He testified that, upon reviewing Debtor's Amended Schedule J, the Debtor claimed excessive expenses for storage, books, art and music lessons, summer camps, and cellular phone service. He also testified that the Debtor's spouse's expense for air travel were excessive. (Weaver, J., Direct). On cross examination, however, the bankruptcy analyst stated that he did no investigation of the reasonableness of several of the claimed expense amounts, and merely testified that in the context of a bankruptcy petition, expenses such as the Debtor had listed were generally considered unreasonable. (Weaver, J., Cross). He conceded that he did not investigate whether $175.00 per month is a reasonable expense for a debtor who makes international calls, or whether $100.00 per month is a reasonable expense for furniture storage. (Weaver, J., Cross). Thusly, his testimony in these regards was both conclusory and unsubstantiated.

Significantly, he also testified that the Debtor's food and transportation expenses exceed those listed in the IRS National Standards. (Weaver, J., Direct; UST Exh. 12). He testified that the Debtor claimed a household size of two individuals on his Means Test. Notedly, the IRS National Standards lists an allotted monthly food expense of $528 for a household of two individuals and $626 for a household of three individuals. (UST Exh. 12). It is further observed that the Debtor's claimed food expense of $700 per month even exceeds the dollar amount allotted for a household of three. Thus, the Debtor's food expense would be excessive even if his son and wife lived with him full time. The IRS National Standards also provides a monthly transportation expense for one car in the Cleveland Metropolitan Statistical Area of $186. (UST Exh. 12). The Debtor's claimed fuel expense of $359 per

month far exceeds the $186 allotted in the IRS National Standards. In this regard, the bankruptcy analyst's testimony was persuasive and supported by the IRS National Standards. *Id.*

A number of the Debtor's expenses are excessive. Even assuming it was reasonable for the Debtor to purchase organic foods to alleviate his son's health condition, $700.00 per month is an excessive food expense for two people, particularly considering that the Debtor's son does not live with him full-time and does not eat every meal with the Debtor. A gasoline expense of approximately $359.00 per month is excessive, even considering the Debtor's commute from his residence to the two campuses where he works. Notwithstanding the lack of reasonableness of the fees of art and music lessons and summer camps, such expenses are, in and of themselves, unreasonable in light of the Debtor's other expenses. *See In re Christie,* 172 B.R. 233 (Bankr.N.D.Ohio 1994) (finding recreation and entertainment expenses excessive); *In re Mooney,* 313 B.R. 709 (Bankr.N.D.Ohio 2004) (finding $900.00 per month in childcare expenses excessive); *In re Roth,* 108 B.R. 78 (Bankr. W.D.Pa.1989) (finding expenses for piano lessons excessive). Furthermore, there is no evidence of record that Debtor's son has any certified disability or condition that qualifies as exceptional circumstances to justify these expenses. None of the subject camps appear to be directed at assisting children with special needs; rather, they appear to be open to the general public. Further, a $100 per month expense for books and CDs for the Debtor's son is excessive when the Debtor testified that his son checks out books and CDs from the library. (Srikantia, P., Cross). Several of these expenses could be reduced or eliminated without depriving the Debtor or his dependents of necessities while providing at least some payment to unsecured creditors.

There is no set standard by which a court can decide if a debtor's budget is excessive, given the fact-intensive inquiry of such a determination. *In re Mooney,* 313 B.R. at 716. It is well established, however, that a discharge in bankruptcy is conditioned on a debtor's willingness to make some sacrifices. *In re Felske,* 385 B.R. at 656. Herein, it appears that the debtor earns a substantial income, even with a reduction in his teaching load, but continues to live beyond his means rather than reduce his expenses to pay some dividend to unsecured creditors. The Debtor was not forced into bankruptcy by an unanticipated or catastrophic event. With prudent adjustments to his cost of living, he has the ability to pay a reasonable dividend to his unsecured creditors.

Thusly, based on the totality of the Debtor's financial situation, it is hereby determined that granting the Debtor relief under Chapter 7 would constitute abuse pursuant to § 707(b)(3).

\*     \*     \*     \*     \*     \*

Accordingly, the Trustee's motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(3) is granted, and the Debtor's case is hereby dismissed. The Debtor's objection is hereby overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**